# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
## IN AND FOR KENT COUNTY

| | | |
|---|---|---|
| JAMAR R. HYNSON, | : | |
| | : | C.A. No: K14C-03-023 RBY |
| _____Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| DOVER DOWNS, INC., | : | |
| | : | |
| Defendant. | : | |

Submitted: *August 19, 2015*
Decided: *September 2, 2015*

*Upon Consideration of Plaintiff's Motion in Limine
to Exclude Police Report and Related Testimony*
**GRANTED**

*Upon Consideration of Defendant's Motion to Exclude
David Johnston/Motion for Summary Judgment*
**DENIED**

*Upon Consideration of Defendant's Motion in Limine to Exclude Plaintiff's
Expert from Referencing Articles on Statistics and Comments Regarding
Alcohol*
**GRANTED**

*Upon Consideration of Defendant's Motion in Limine to Exclude Evidence
Regarding Security Officers' Wages*
**GRANTED**

*Upon Consideration of Defendant's Motion in Limine to Exclude Plaintiff's
Expert from giving Opinions on Improper Training*
**DENIED**

**ORDER**

Scott E. Chambers, Esquire, Schmittinger & Rodriguez, Dover, Delaware for Plaintiff.

Michael J. Logullo, Esquire, Heckler & Frabizzio, Wilmington, Delaware for Defendant.

Young, J.

*Hynson v. Dover Downs, Inc.*
*C.A. No.: K14C-03-023 RBY*
*September 2, 2015*

## SUMMARY

Jamar Hynson ("Plaintiff") and James Downes ("Downes") spent the evening of May 17, 2013 at Dover Downs, Inc.'s ("Defendant") Casino in Dover, Delaware. Plaintiff alleges that, upon their leaving, the pair was attacked by unknown assailants. Plaintiff claims that he sustained injuries in the assault as a result of inadequate security measures taken by Defendant. Plaintiff filed suit alleging negligent failure to protect a business patron against third party criminal activity.

Following extensive discovery, including the deposition of Plaintiff's expert witness, David Johnston ("Johnston"), both parties have moved to exclude various testimonies and pieces of evidence. There is a total of five motions in limine, plus one summary judgment motion, accompanying one of the motions in limine. Upon consideration of these motions, and the record in this case, the Court finds the following.

## FACTS AND PROCEDURES

On the evening of May 17, 2013, Plaintiff and his companion Downes were patrons at Defendant's Casino. Specifically, Plaintiff claims he and Downes spent the night at Doc Magrogan's restaurant, located on the premises. Plaintiff asserts that neither he nor Downes consumed any alcohol at the restaurant. It is alleged that, at some juncture, Downes exchanged unpleasantries with some other customer at the Casino. After spending most of the evening at the Casino, at around 1:14 a.m. the next morning, Plaintiff and Downes left through the west entrance doors. Upon exiting, Downes was assaulted and knocked unconscious by

3

an unknown assailant, followed by a similar attack on Plaintiff. Plaintiff's attacker or attackers are, also, unknown. As a result of the incident, Plaintiff purportedly suffered a fractured mandible and head injury.

Plaintiff filed suit against Defendant on March 14, 2014. Substantial discovery has taken place, including the deposition of Plaintiff's expert Johnston, held on July 27, 2015. Trial is scheduled for October 2015.

## DISCUSSION

Plaintiff claims that his injuries, allegedly sustained from the attack by unknown assailants, was the direct result of an inadequate security program at Defendant's establishment. Plaintiff asserts Defendant was negligent in not preventing the criminal conduct of the unidentified third parties. After over a year of discovery, Plaintiff's case approaches trial. Various depositions and other pieces of evidence have been compiled, the admissibility of which, presently, require the Court's attention. A total of five motions in limine have been filed by the parties, as well as a motion for summary judgment, attached to one of the motions in limine. The Court addresses each in turn.

### I. Plaintiff's Motion in Limine to Exclude Police Report

In a clear attempt to dispute Plaintiff's version of the events of that fateful evening – to wit, that he and his companion were innocent victims attacked by a group of assailants in a fit of rage – Defendant seeks to admit the police report and testimony of an officer, implicating Plaintiff in a later charge for resisting arrest. The police report and officer's testimony detail an incident occurring several months after the events forming the basis of Plaintiff's claim, in which Plaintiff

allegedly behaved in a disorderly manner at the scene of a house party. There is some indication that Plaintiff's conduct in that later event was fueled by alcoholic consumption. Plaintiff moves to exclude the evidence comprising his charge for resisting arrest, on the grounds that it is not relevant, and is, further, improper character evidence.

Delaware Rule of Evidence ("D.R.E.") 402 provides, in short, that evidence which is not relevant is not admissible. Relevant evidence is defined by D.R.E. 401 as: "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Plaintiff argues that this later charge is neither relevant to the alleged attack nor relevant to the negligence on the part of Defendant, in failing to protect him from the criminal acts of third parties.

On the contrary, physical altercations in which the Plaintiff was involved, in similarly recreational settings, could go to the credibility of Plaintiff's version of events at Dover Downs, that he was an innocent victim in the assault. Plaintiff alleges that his companion's disagreement with some other patrons led to the full blown assault. Plaintiff's remaining detached or disinterested in this heated exchange could be a significant question. Thus, the defense might argue that Plaintiff's charge for resisting arrest at a rowdy party could reflect on an issue of comparative negligence in the instant matter.

Nevertheless, although relevant, that does not mean the police report or

related testimony are *admissible.*[1] First, the D.R.E. 403 issue arises. Hence, although relevant, evidence may be excluded if its probative value is substantially out weighed by the danger of unfair prejudice, and so forth. That is a significant factor here. It need not require extensive analysis, however, because of the effect of D.R.E. 404, which provides that, as a general rule, evidence of character is inadmissible. Specifically, courts are concerned with excluding evidence of a party's "propensity to commit crimes, or his general bad character," as it is "inconsistent with the presumption of innocence."[2] These worries arise predominantly out of situations involving criminal defendants, but, the exclusion of evidence of bad character has been extended to civil cases as well.[3] Therefore, in order for Plaintiff's subsequent charge to enter into evidence, it must meet one of the accepted exceptions to the general rule of exclusion.

Evidence of bad acts is normally admitted in two factual situations. "The first involves the use of prior acts which are so unusual and distinctive that their relationship to the [relevant conduct in the case at issue] may establish identity."[4] "The second basis for admissibility of the other bad acts under the plan or scheme exception is where the other acts form part of the background of the alleged act, to

---

[1] *Minnick v. State*, 541 A.2d (Del. 1988) (recognizing relevancy determination as the "threshold test").

[2] *Getz v. State*, 538 A.2d 726, 731 (Del. 1988).

[3] *Brett v. Berkowitz*, 1995 WL 270146, at *7 n.6 (Del. Super. Ct. Apr. 13, 1995) ("the guidelines regarding the admissibility of evidence under D.R.E. 404(b)...are applicable to civil cases").

[4] *Id.,* at *7(internal quotations omitted).

which it is inextricably related and without which a full understanding of the charged offense is not gained."[5] Neither of these two exceptions is applicable to Plaintiff's claim, nor to the circumstances alleged in his complaint.[6]

The Court notes that there is an additional instance in which character evidence may be introduced against a party. Where the party "wishes to introduce character, reputation, or general practice"evidence, then the opposing side may do so as well.[7] At the present time, Plaintiff has made no indication that he so desires. Therefore, until that time when Plaintiff opens the door, so to speak, to pertinent character evidence, Defendant may not introduce the police report, or any other forms of evidence relating to Plaintiff's penchant for disorderly conduct. Subject to such an opening, Plaintiff's motion is **GRANTED.**

## II. Defendant's Motions in Limine & Motion for Summary Judgment

*a. Defendant's Motion in Limine to Exclude Expert David Johnston/Motion for Summary Judgment*

In support of his negligence claim against Defendant, Plaintiff has retained an expert witness, Johnston. Johnston produced an expert report, which, among other things, asserts that Defendant did not provide adequate security measures to prevent the alleged criminal act of a third party alleged to have been suffered by Plaintiff. Johnston is a "Board Certified Protection Professional," with fifty-plus

---

[5] *Id.*

[6] Nor are the other recognized exceptions to the prohibition of character evidence applicable, e.g., intent, motive. *Brett*, 1995 WL 270146 at *7.

[7] *Brett*, 1995 WL 270146 at *8.

years of experience in the security field. He has also, purportedly, testified as an expert witness in another Superior Court case.[8]

Defendant asserts that Johnston is not qualified to testify as an expert witness in this case. Defendant bases this argument on, more or less, three grounds. The first argues that Johnston did not base his opinion on proper factual foundation. Citing to Johnston's deposition testimony, Defendant asserts that Johnston did not review the Delaware Lottery Regulations, and failed to perform a risk assessment in coming to his conclusions. As to the Lottery Regulations, Defendant contends that Johnson is, indeed, prohibited from active surveillance monitoring outside of the Casino, in the area of the alleged attack. It is Defendant's position that this a crucial factor, neither addressed nor known by Johnston, demonstrating that his opinion is based on pure speculation.

The second reason articulated by Defendant for the inadmissibility of Johnston's testimony is that Johnston does not have experience working for the security department of a casino. The lack of such experience is said to disqualify him from providing *expert* testimony.

Lastly, Defendant takes issue with the methodology employed by Johnston. Pointing, again, to the failure to review the Lottery Regulations, and failure to conduct a risk assessment, Defendant argues that Johnston has solely based his findings on his "experience," which, as mentioned, Defendant avers is not applicable to casino security. Defendant, thus, moves for summary judgment.

---

[8] *See Rogers v. Delaware State Univ.*, 2007 WL 625060, at *1 (Del. Super. Ct. Feb. 28, 2007).

Contending that the testimony is inadmissible, Defendant continues this line of argument further, stating that without a liability expert, Plaintiff cannot sustain his claim: "it is settled law in Delaware, that the standard of care applicable to a professional can be established only through expert testimony."[9] Where such testimony is lacking, "a motion for summary judgment will be granted."[10]

When considering the admissibility of expert testimony, the Court is to act as a "gatekeeper" to determine whether "expert's opinion [is] based upon proper factual foundation and sound methodology."[11] D.R.E. 702 requires that witnesses providing scientific or technical testimony be qualified. The Delaware Supreme Court has established a five-step test to determine admissibility of scientific or technical expert testimony:

> (1) the witness is qualified as an expert by knowledge, skill, experience, training, or education; (2) the evidence is relevant; (3) the expert's opinion is based upon information reasonably relied upon by experts in the particular field; (4) the expert testimony will assist the trier of fact to understand the evidence or to determine a fact in issue; and (5) the expert testimony will not create unfair prejudice or confuse or mislead the jury.[12]

Importantly, the expert's method must not be derived from "subjective belief or speculation."[13] With these several factors in mind, the Court addresses

---

[9] Citing *Robinson v. J.C. Penny Co.,* 977 A.2d 899 (Del. 2009).

[10] *Id.*

[11] *Perry v. Berkley*, 996 A.2d 1262, 1267 (Del. 2010).

[12] *Bowen v. E.I. DuPont Nemours & Co.,* 906 A.2d 787, 795 (Del. 2006).

[13] *Price v. Blood Bank of Delaware, Inc.*, 790 A.2d 1203, 1210 (Del. 2002).

Defendant's contentions.

With regard to the notion that Johnston's testimony is not based in proper factual foundation, the Court finds that the two considerations lacking from Johnston's opinion (Delaware Lottery Regulations and risk assessment) speak more to his credibility, than to the admissibility of his findings: "factual basis of an expert opinion go to the credibility of the testimony, not the *admissibility*, and it is for the opposing party to challenge...the expert opinion on cross-examination."[14] Indeed, although Johnston did not review the factors that Defendant finds to be critical, he did study other, extensive sources of information relating to security procedures. For example, Plaintiff presents Johnston's testimony as stemming from "review[ing] the extensive material available, including crime data, Dover Downs' security program, the security officer's deposition testimony....[which] he applied...to the facts surrounding Mr. Hynson's assault..."[15] This appears to be sufficient, adequate ground upon which to form an opinion.

Defendant's argument as to Johnston's background is unavailing. Although Johnston may never have been employed by a casino, he has fifty-plus years of security experience and is a "Board Certified Protection

---

[14] *Perry*, 996 A.2d at 1271 (emphasis added).

[15] Plaintiff's Opposition to Defendant's Motion in Limine to Exclude Johnston's Testimony, at ¶ 10. In addition, Johnston's Report indicates his reliance on "fifty-plus years of professional, hands on experience in related security management and risk assessment matters, participation with and/or study of relevant research in the field of Security Management, reliance upon an extensive body of knowledge, and benchmarking similar environs with regard to apply standard security practices." Ex. F to Plaintiff's Opposition, at p.6.

Professional" in the field. The Supreme Court has articulated that the preparation necessary to testify as an expert stems from "knowledge, skill, experience, training, or education."[16] To the extent he has not worked in a casino, Johnston has supplemented this lack of experience by *education*. Though opening Johnston to more cross-examination, that will not disqualify him.

Defendant's assertion that Johnston's methodology was speculative and unsound is not persuasive. The *Rogers v. Delaware State University* Court, before which Johnston appeared previously as an expert in Delaware, recognized that his "adequate" foundation "imparts an objective and sound methodology."[17] Likewise, in the case at bar, the Court has determined that Johnston reviewed extensive materials, pointing to a proper foundation. Moreover, Johnston employed a similar method in *Rogers*,[18] which that Court acknowledged "appears to be the exact type relied upon by other experts in the security field."[19] There is no reason to find that Johnston employed speculative methods, untested in the field.

---

[16] *Bowen*, 906 A.2d at 795.

[17] 2007 WL 625060 at *2.

[18] "[t]he underlying factual basis for Mr. Johnston's opinions...was his examination of DSU's reported crime and incident data, and an examination of DSU's current security program. Mr. Johnston applied this data and information to the facts of the case, and relied upon several authoritative texts, treatises, and reports as an foundation for his opinions."2007 WL 625060 at *2.

[19] *Rogers,* 2007 WL 625060 at *2.

With respect to the remaining factors designated by the Supreme Court, the Court finds Johnston's testimony satisfies the standard. Johnston's testimony is relevant. Plaintiff's claim rests almost entirely upon the assertion that Defendant employed inadequate security procedures. Expertise concerning the reasonable standard of care in security monitoring is directly on point. In the same vein, Johnston's opinion is helpful to the trier of fact in determining whether Defendant should have done more to protect Plaintiff from the alleged assault.

The Court finds that Johnston is qualified to present expert testimony as to the security procedures employed by Defendant. Therefore, Defendant's motion in limine is **DENIED**. In addition, given Plaintiff's retention of a *qualified* liability expert who will testify as to this matter, Defendant's motion for summary judgment is, also, **DENIED**.

*b. Defendant's Motion in Limine to Exclude Alcohol and Crime Statistical Testimony*

Part of Johnston's expert testimony is that there is a link between alcohol consumption and crime rates. Johnston relies upon statistical data to support this assertion. Defendant moves to exclude this evidence, arguing it is not relevant, pursuant to D.R.E. 402, and that its probative value is far outweighed by the risk of jury confusion and prejudice, under D.R.E. 403.

The resolution of this dispute depends upon what the core of Plaintiff's claim is, that is, Plaintiff's theory of the case. As per Plaintiff's Complaint, it is alleged that Defendant owed a duty to Plaintiff, and other business invitees,

to protect against foreseeable third party criminal acts. Plaintiff further avers that, at the time of the incident, the security procedures in place were woefully inadequate. As a result, Plaintiff claims that he suffered personal injury from the criminal attack by unidentified third parties. In failing to prevent the attack, Defendant is alleged to have breached his duty to Plaintiff.

The Delaware Supreme Court has articulated that a proprietor's duty to protect patrons against the acts of third parties arises from prior "incidents of criminal activity."[20] Such prior occurrences may make it foreseeable that further third party criminal activity may occur, and proprietors are to take reasonable care to prevent it.[21] Importantly, the prior criminal activity is that which occurs "*on the premises*...[establishing] the circumstantial setting in which security needs are measured."[22] This is a significant point, as the statistical evidence Johnston relies upon is *general*, rather than specific to the Dover Downs Casino or the surrounding area. The broad statement that the consumption of alcohol leads to criminal activity by third parties is not applicable to a negligence standard that creates a duty, based upon prior violent acts on the premises in question. These concerns go to the issue of relevance. It is not clear how the trier of fact will be helped in determining Defendant's duty, with these general statistical findings. Such data does not create the foreseeability defined by the Supreme Court. Had Johnston

---

[20] *Jardel Co., v. Hughes*, 523 A.2d 518, 525 (Del. 1987).

[21] *Id.*

[22] *Id.*, at 526 (emphasis added).

reviewed *local* incident reports involving criminal acts by impaired, drunken patrons, this Court could perceive a relevancy, had alcohol been involved in this matter.

However, Plaintiff does not allege by his Complaint that alcohol was a contributing factor in his assault. Thus, the presence of alcohol cannot be tied to Defendant's negligence. Plaintiff maintains that neither he nor his companion consumed alcoholic beverages on the night of the melee. As the alleged assailants remain unidentified, there is, further, no evidence that the attackers were under the influence. Even if Johnston's statistics are taken at face value, they have little to do with the factual circumstances as represented in Plaintiff's Complaint. Even statistics specific to Defendant's own establishment involving instances of alcohol induced brawls may not be on point or relevant, given that alcohol does not appear to be a factor in Plaintiff's allegations.

There is, further, the concern expressed by D.R.E. 403 that, where the probative value of evidence is greatly outweighed by risk of jury confusion or prejudice, such evidence should be excluded. Given the duty of care standard applicable to proprietors' and third party acts requiring future foreseeable conduct, these general statistical findings may confuse the jury as to the issues in this case. Defendant cites to the proposition of the Supreme Court in *Timblin v. Kent Gen. Hosp.* that "evidence of statistical probability creates a significant risk of jury confusion and unfair prejudice because such evidence may lead a jury to decide a case based on what happens normally rather than

what happened in the case before it."[23]

Plaintiff contends that *Timblin* is inapposite, as it is a medical malpractice claim.

The Court sees no real distinction here. As the *Timblin* Court stated "[a] plaintiff in a medical malpractice action must prove that the doctor's inadequate treatment was the proximate cause of the patient's injury..."[24] Much the same theory underlies Plaintiff's negligence suit. Plaintiff must prove that Defendant's inadequate security procedures were the proximate cause of harm, resulting from the foreseeable criminal acts of third parties. At their core, these two actions are the same. Therefore, the potential of general statistical evidence misleading the jury is equally applicable to the case at bar.

As regards the statistical evidence concerning alcohol and crime rates, since this data is not specific to the premises in question, the jury may very well misguidedly focus upon that data in finding previous incidents of criminal activity, where, potentially, there are none. These findings are not meant to show that, on prior occasions, other patrons of Defendant's establishment have been attacked by intoxicated assailants frequenting the casino. Rather, the statistics are meant to show that alcohol, in a broad sense, causes violence. This is not relevant to the duty owed by Defendant to Plaintiff. Defendant was to protect Plaintiff, and other business invitees, from foreseeable acts by third parties. Lastly, as Plaintiff has not alleged alcohol

---

[23] 640 A.2d 1021, 1025 (Del. 1994).

[24] *Id.*, at 1024.

was a contributing factor in the assault, such information may wrongly prejudice the jury to believe otherwise.

Johnston's testimony regarding the correlation between criminal acts and alcohol consumption is not relevant to the facts and legal theory pleaded in Plaintiff's Complaint. Moreover, these widespread statistics create a true possibility of jury confusion. Thus, Defendant's motion in limine regarding the alcohol testimony is **GRANTED**.

*c. Defendant's Motion in Limine to Exclude Security Officers' Wages*

One of the deponents in the instant matter, John Hardy ("Hardy"), was formerly a Security Officer employed by Defendant. At the time of the incident in question, Hardy was stationed near the area of the attack, and was one of the responding officers. During the course of his deposition, testimony was elicited as to Hardy's hourly wage, stated to be $10.00 per hour. Hardy, additionally, testified that he was not willing to engage with brawling patrons for such a level of pay. Defendant moves to exclude evidence of Defendant's security officers' hourly wages, arguing these figures are irrelevant, creating the high chance of jury confusion and prejudice. Plaintiff responds that the low wages and resulting low morale point to the inadequate security procedures in place.

The Court notes that $10.00 per hour is above the minimum wage in Delaware.[25] Moreover, the views expressed by Hardy that he was unwilling to,

---

[25] At present, the minimum wage in Delaware is $8.25. *http://dia.delawareworks.com/labor-law/minimum-wage.php.*

in essence, perform the functions of his employment, because he was unsatisfied with his earnings, may reflect more upon a work ethic, than anything else. The wages that he and other security officers earned while employed by Defendant are not relevant to the issue at hand. The question is whether the security mechanisms of Defendant's establishment were sufficient to prevent  foreseeable third party criminal actions. As regards the security officers, the trier of fact might relevantly be helped by learning of the type and extent of training or preparation that the officers received, rather than the wages that they earned.

Additionally, any wage level information may confuse or prejudice the jury. Plaintiff, by his own admission, seeks to enter this salary figure into evidence in order to paint Defendant as paying his security officers poorly. However, Defendant's wage practices are not at issue in this case. Instead, it is Defendant's security procedures that are on trial. The admission of such evidence would work to take attention away from what is really at issue. Defendant's motion is **GRANTED**.

 *d. Defendant's Motion in Limine to Exclude Improper Training Evidence*

During his deposition, held on July 27, 2015, Plaintiff's expert Johnston testified to the purportedly insufficient training received by the security officers employed by Defendant. Defendant objects to this testimony, arguing that the assertion of improper training appeared, for the first time, in this deposition. The Court understands Defendant's contention to be that this opinion was not properly and timely disclosed. The discovery deadline closed

17

on August 3, 2015. Defendant seeks to exclude the testimony regarding the officers' training, as Defendant did not have time to procure rebuttal testimony from its own expert witness.

In response, Plaintiff references several occasions during which the training allegations were made. Most notably, Plaintiff points to his Complaint, whereby he pleaded the following: "*[Defendant] failed to establish and/or enforce internal operating standards and procedures designed to protect Defendant's customers, including Plaintiff, from foreseeable criminal assaults...*"[26] It is Plaintiff's position that this language, inherently, encompasses allegations of improper training. Plaintiff also cites to language in Johnston's expert report, which speaks to the below-standard security procedures in place at Defendant's Casino.[27] In addition, Plaintiff asserts that the deposition testimonies of a number of other witnesses, elicited prior to Johnston's deposition, included assertions of inadequate security officer preparation.

Superior Court Civil Rule 26 requires that each party disclose its respective experts, the experts' opinions, and the bases for these opinions, "so that the opposing party can properly prepare for depositions and trial."[28] That is, "[i]t is not reasonable to require [opposing] counsel to go on a wild goose

---

[26] Plaintiff's Opposition to Defendant's Motion to in Limine to Exclude Improper Training Testimony, at ¶ 2 (emphasis in the original).

[27] *See* Ex. B to Defendant's Motion to in Limine to Exclude Improper Training Testimony.

[28] *Sammons v. Doctors for Emergency Servs. P.A.,* 913 A.2d 519, 530 (Del. 2006).

chase with [adversary's] experts or to depose [adversary's] experts without the benefit of having the opinions and medical or scientific reasoning for these opinions."[29]

The disagreement between the parties concerns the level of specificity required by expert disclosures. Both Plaintiff's Complaint and Johnston's expert report speak to security standards and procedures. This language is very broad, and can be argued to apply to a wide range of testimony – including that pertaining to the officers' preparation and education. Indeed, in considering, *supra,* the type of relevant testimony regarding the security officers employed by the Defendant, this Court recognized that the training received is more relevant than the wages paid.

The Delaware Supreme Court in *Sammons v. Doctors for Emergency Servs. P.A.* stated merely that "do[ing] [nothing] more than...identify[ing]... expert witnesses and then [opposing side] could take depositions to learn what those opinions might be" was insufficient as an expert disclosure.[30] Clearly, Plaintiff has done much more in the way of disclosure than the litigant in *Sammons*. However, neither the Complaint, nor Johnston's expert report expressly states that Defendant's security officers were improperly trained.

It is generally accepted in Delaware that the substance of an expert's opinion may be "explored thoroughly by counsel at deposition" and that "[t]his is a proper means by which to obtain from an expert a detailed preview

---

[29] *Id.,* at 529.

[30] 913 A.2d at 529 (internal quotations omitted).

of the testimony the expert will offer at trial."[31] Therefore, as it was revealed, albeit generally, that Johnston would be testifying as to the efficacy of the security program in place at Defendant's casino, prior to the deposition, his statements concerning the officers' training were not so unexpected as to lead Defendant on a "wild goose chase."[32] Furthermore, the deposition was an appropriate place for the procurement of a "detailed preview" of Johnston's trial testimony.[33] Stated more precisely, it is permissible for a deponent to expound upon, with more *specificity*, the exact substance of his expert opinion at his deposition.

The Court, therefore, **DENIES** Defendant's motion in limine, permitting the admission of Johnston's testimony as to the allegedly ineffective training received by Defendant's security officers. However, the Court notes Defendant's concern of not having had time to procure rebuttal testimony. Thus, Defendant may request an extension of time to do so, to which Plaintiff may, of course, respond.

## CONCLUSION

For the foregoing reasons the Court: 1) **GRANTS** Plaintiff's motion in limine to exclude the police report and related testimony; 2) **DENIES** Defendant's motion in limine to exclude Johnston's expert testimony/motion for

---

[31] *Simmons v. Bay Health Med. Ctr., Inc.*, 2007 WL 4237723, at *3 (Del. Super. Ct. Nov. 30, 2007).

[32] *Sammons*, 913 A.2d at 529.

[33] *Simmons,* 2007 WL 4237723 at *3.

summary judgment; 3) **GRANTS** Defendant's motion in limine to exclude alcohol and crime statistical testimony; 4) **GRANTS** Defendant's motion in limine to exclude security officers' wages; and 5) **DENIES** Defendant's motion in limine to exclude testimony of improper training.

**IT IS SO ORDERED**.

<u>/s/ Robert B. Young</u>
J.

RBY/lmc
oc:    Prothonotary
cc:    Counsel
        Opinion Distribution
        File