# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| HERBIE DAVIS,<br>    Plaintiff, | )<br>)<br>)<br>) | |
| v. | )<br>)<br>) | C.A. NO. N22C-07-055 DJB |
| STEVENSON WAYNE CROSSE,<br>and ROSEMARIE BAIN-CROSSE,<br>    Defendants. | )<br>)<br>)<br>) | |

Date Submitted:  July 31, 2023
Date Decided:  October 31, 2023

## MEMORANDUM OPINION

*On Defendant's Motion to Exclude Plaintiff's Experts – **GRANTED** in part,*
***DENIED** in part;*
*On Defendant's Motion for Summary Judgment on Punitive Damages – **DENIED**;*
*On Defendant's Motion to Preclude Personal Property Damages – **DENIED**.*

Bayard Marin, Esquire, and Daulton Gregory, Esquire Law office of Bayard Marin, Wilmington, Delaware; *for Plaintiffs.*

Kenneth M. Doss, Esquire, Casarino Christman Shalk Ransom & Doss, P.A., Wilmington, Delaware; *for Defendants.*

**BRENNAN, J.**

## I.    INTRODUCTION

This civil action stems from an apartment fire at 821 N. Lombard Street, Wilmington, Delaware 19801 (the "Apartment"). Plaintiff Herbie Davis ("Plaintiff") leased the Apartment from Defendants Stevenson Wayne-Crosse and Rosemarie Bain-Crosse (collectively "Defendnats"). Plaintiff filed a three-count Complaint alleging a claim of negligence and two statutory claims under Delaware's Landlord-Tenant Code all based upon the theory that the water heater was defective in that there was an exposed pilot light flame.

Before the Court are three motions: (1) Defendants' *Daubert* Motion to Preclude Plaintiff's Liability Experts;[1] (2) Defendants' Motion for Summary Judgment on Claim for Punitive Damages;[2] and (3) Defendants' Motion to Preclude Plaintiff's Personal Property Damages.[3]

For the reasons explained below, the Court **GRANTS** in part and **DENIES** in part Defendants' *Daubert* Motion to Preclude Plaintiff's Liability Experts. Defendants' Motions for Summary Judgment and to Preclude Plaintiff's Personal Property Damages are both **DENIED**.

## II.    BACKGROUND

Plaintiff leased the Apartment from Defendants beginning in September 2013. On February 17, 2022, Plaintiff's spouse, Tomora Davis, was cooking at the Apartment while Plaintiff was not home. Ms. Davis entered the pantry, which contained the Apartment's water heater, and reached to grab a box from the pantry shelf. At that moment, Ms. Davis felt something fall and immediately heard a hissing sound emanating from the water heater. The water heater then exploded,

---

[1] D.I. 27.
[2] D.I. 26.
[3] D.I. 28.

knocking Ms. Davis backwards. Flames and black smoke quickly engulfed the pantry. Unable to operate the fire extinguisher, Ms. Davis left the Apartment, while a friend called 911. The fire and smoke damaged much of Plaintiff's personal property.[4]

In the months leading up to the fire, the pilot light on the Apartment's water heater had gone out twice. Plaintiff avers the water heater did not have a pilot light cover, and as a result, the pilot light's flame was exposed to open air. Plaintiff further avers that prior to the fire, Defendants had been notified of the missing pilot light cover.

Plaintiff alleges that the missing pilot light cover caused the fire and that Defendants were negligent in failing to inspect, warn, or repair the allegedly unsafe condition.[5] Relevant to the pending motions, Plaintiff seeks to admit the testimony of two liability experts: David Brinton and Richard Cole, and recover punitive and lost personal property damages.

## III. DISCUSSION

### A. Defendants' Daubert Motion to Preclude Plaintiff's Liability Experts

Defendants move to exclude Plaintiff's liability experts, David Brinton and Richard Cole, under D.R.E. 702. Defendants argue that Plaintiff's liability experts are not qualified to offer an opinion as to the cause of the fire. Defendants further contend that Plaintiff's experts' opinions rest on an unreliable foundation and methodology.

In opposition, Plaintiff contends that both liability experts are qualified, and their testimony is admissible at trial. Plaintiff neglects to address any arguments concerning the reliability of the liability experts.

---

[4] D.I. 1.
[5] Compl. ¶¶ 9-16, July 7, 2022 (D.I. 1).

Delaware Rule of Evidence 702, which is substantially similar to Federal Rule of Evidence 702, governs the admissibility of expert testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.[6]

"The trial judge acts as the gatekeeper in deciding whether an expert's testimony has a reliable basis in the knowledge and experience of the relevant discipline."[7] Consistent with the United States Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*,[8] Delaware courts "apply a five-step test to determine the admissibility of scientific or technical expert testimony."[9] The Court must ensure:

(1) the witness is qualified as an expert by knowledge, skill, experience, training, or education;
(2) the evidence is relevant;
(3) the expert's opinion is based upon information reasonably relied upon by experts in the particular field;
(4) the expert testimony will assist the trier of fact to understand the evidence or to determine a fact in issue; and
(5) the expert testimony will not create unfair prejudice or confuse or mislead the jury.[10]

---

[6] D.R.E. 702.

[7] *Bowen v. E.I. DuPont de Nemours & Co.*, 906 A.2d 787, 794 (Del. 2006) (internal quotation marks and citations omitted).

[8] 509 U.S. 579 (1993).

[9] *Bowen*, 906 A.2d at 795.

[10] *Id.*

In determining the reliability of expert testimony, trial courts consider a list of non-exhaustive factors, which include: "(1) whether the expert opinion testimony can be (and has been) tested, (2) whether it has been subjected to peer review and publication, (3) its known or potential error rate, and (4) whether it has attracted widespread acceptance within a relevant scientific community."[11]  The touchstone of a reliability inquiry under *Daubert* centers on the "principles and methodology used in formulating an expert's testimony, not on the expert's resultant conclusions."[12] These factors are not definitive and are to be applied in "a flexible manner that takes into account the particular specialty of the expert under review and the particular facts of the underlying case."[13] Plaintiff bears the burden of establishing the admissibility of the proffered expert's testimony by a preponderance of the evidence.[14]

### 1. DAVID BRINTON

David Brinton is a licensed plumber who has worked with water tanks for thirty years.[15]  In generating his liability opinion, Brinton consulted multiple Wilmington Fire Department documents related to the fire, Plaintiff's expert report on lost personal property damages, and two sworn affidavits. Brinton was not deposed.

Brinton opined that a missing pilot light cover is unsafe and "could" cause a fire.[16]  Notably, Brinton does not offer an opinion that the missing pilot light cover

---

[11] *Tumlinson v. Advanced Micro Devices, Inc.*, 81 A.3d 1264, 1269 (Del. 2013) (internal quotations marks omitted) (quoting *Daubert*, 509 U.S. at 580).

[12] *Bowen*, 906 A.2d at 794 (internal quotation marks and citations omitted).

[13] *In re Asbestos Litigation*, 911 A.2d 1176, 1198 (Del. Super. Ct. 2006) (internal citations omitted).

[14] *Id.* at 795 (citing *Minner v. Am. Mortg. & Guar. Co.*, 791 A.2d 826, 843 (Del. Super. 2000)).

[15] Defs.' Daubert Mot., Ex. C, May 5, 2023 (D.I. 27).

[16] *Id.*

at issue here caused the fire. Brinton's expert report consists of mostly one-word responses to a series of questions not tailored to the specific facts of this case. Brinton neither explains his answers nor elaborates on how he reached his conclusions.

In evaluating the reliability of an expert opinion, this Court's examination "must be solely [focused] on principles and methodology, not on the conclusions that they generate."[17] Brinton's report solely consists of conclusory determinations, lacking any mention of the principles and methodology used. Given the particular factual circumstances of this case, Brinton does have the experience and a basis of knowledge necessary to provide an opinion. However, this report does not articulate the basis for his opinions, nor does it do much more than simply answering the series of questions posed. Though this Court is afforded broad latitude in determining reliability,[18] the proffered opinion here offers no discernable basis from which to weigh its reliability.

Due to these facts, the Court will treat the report as an expert disclosure as allowed by the Trial Scheduling Order in this case, as well as permitted under Superior Court Civil Rule 26(b)(4). Prior to making a final ruling on the admissibility of Brinton's opinion before a jury, *voir dire* will be permitted outside the presence of the jury to further explore the basis of his opinions. At that time, the Court will make a final determination of the admissibility of the proffered opinion.

---

[17] *Tumlinson*, 81 A.3d at 1269-70 (alterations in original) (quoting *Daubert*, 509 U.S. at 595).

[18] *Perry v. Berkley*, 996 A.2d 1262, 1267 (Del. 2010).

## 2. RICHARD COLE

Richard Cole worked for Philadelphia Gas Works' field service department for thirty years, which involved work with water heaters.[19] Cole reviewed photos of the property, sworn affidavits, Wilmington Fire Department documents, and the reports of Plaintiff's other experts. Unlike Brinton, Cole opines that the "missing fire doors are what caused the fire."[20] Like Brinton, Cole offers no explanation as to how he reached this conclusion.[21]

Cole, however, was deposed. In his deposition, Cole testified that he either relied on the findings of the Wilmington Fire Department's report or Plaintiff's affidavit - he could not recall which.[22] Neither document, however, supports his view as to the cause of the fire. In fact, the Wilmington Fire Department's report concluded that the cause of the fire was undetermined.[23] At one point during his deposition, Cole agreed with the fire marshal's opinion, conceding that the fire's cause is unknown.[24]

While Cole's one page report is slightly more informative that Brinton's, it will nonetheless be treated as a disclosure pursuant to Superior Court Civil Rule 26(b)(4) given the fact that it is lacking in support for its conclusions. No further *voir dire* is necessary for Cole, however, since the basis for his opinion and his

---

[19] Defs.' Daubert Mot., Ex. D. Exhibit D to Defendants' Daubert Motion contains both Cole's deposition testimony and his expert report.
[20] *Id.*
[21] *Id.*
[22] *Id.*, Dep. Tr. at 24:8-24.
[23] *Id.* Ex. 2 to Cole's Expert Report.
[24] *Id.* at 27:2-12 ("Q: I am asking you if you agree or disagree with the fire marshal's opinion that the cause of this fire was undetermined? A: I agree with it, I guess. I mean, he is the expert in the field.").

experience were explored during his deposition.[25]  Like Brinton, given the particular factual circumstances of this case, Cole has the experience and a basis of knowledge necessary to provide an opinion on the topic of whether a gas heater is unsafe if missing a pilot light cover.

That said, Cole has not provided any basis to support his opinion that "[i]f the water heater had the proper doors or coverings, the fire would not have occurred."[26] Cole's statement that "[a]ll David Briton's [sic] opinions and answers to the questions provided are true and I agree with all the conclusions in that report"[27]is unable to be evaluated at this time.  Whether Brinton's opinion and conclusions are admissible is yet to be decided and a proper determination cannot be made until Brinton is presented for *voir dire*.

Accordingly, the Court **GRANTS** in part and **DENIES** in part Defendants' *Daubert* Motion.  Brinton may not testify until the Court find he has a sufficient basis upon which his testimony can be given after *voir dire*.  And if allowed, neither proffered expert may testify to the cause of the fire.

## B. Defendants' Motion for Summary Judgment on Claim for Punitive Damages.

Defendants move for partial summary judgment as to Plaintiff's claim for punitive damages.  Superior Court Civil Rule 56 dictates that the moving party bears the initial burden to demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[28]  If the

---

[25] The Court will allow the late disclosed supplemental discovery regarding the alleged violations of the International Code Council ("ICC").  While it is not looked upon highly to provide expert discovery outside the time prescribed to in the Trial Scheduling Order, there is seemingly no prejudice here as neither expert is able to testify to the causation of the fire at issue here.

[26] D.I. 27, Ex. D, p. 203 (Exhibit 1 to Cole Depo.).

[27] *Id.*

[28] Del. Super. Ct. Civ. R. 56(c).

moving party makes such a showing, "the burden shifts to [the] non-moving party to demonstrate that there are material issues of fact."[29] Summary judgment is not appropriate when the record evinces a "reasonable indication a material fact is in dispute."[30] In reviewing a motion for summary judgment, the Court is to construe the evidence and all reasonable inferences in the light most favorable to the non-moving party.[31]

Defendants argue Plaintiff has failed to establish that the alleged conduct at issue - failure to inspect and replace a missing pilot light cover - warrants the imposition of punitive damages. Defendants challenge that even accepting Plaintiff's account of events, the evidence does not support submitting the question of punitive damages to the jury. Plaintiff contends that multiple disputed facts warrant the denial of summary judgment here, relying most heavily upon their argument that Defendants' failure to replace the pilot light cover reflects a conscious indifference to his rights. Accordingly, Plaintiff argues that the issue of punitive damages should be decided by the jury.

Under Delaware law, the question of punitive damages is "ordinarily for the trier of fact."[32] However, "summary judgment is appropriate if the evidence permits no reasonable inference that defendant's conduct was sufficiently reprehensible" to justify a punitive damages award to plaintiff.[33]

---

[29] *Moore v. Sizemore*, 405 A.2d 679, 681 (Del. 1979) (citing *Hurtt v. Goleburn*, 330 A.2d 134, 135 (Del. 1974).

[30] *JPMorgan Chase Bank v. Hopkins*, 2013 WL 5200520, at *2 (Del. Super. Ct. Sept. 12, 2013) (citing *Ebersole v. Lowengrub*, 180 A.2d 467, 470 (Del. 1962)).

[31] *Heasley v. Allstate Prop. & Cas. Ins. Co.*, 2022 WL 951261, at *2 (Del. Super. Ct. Mar. 28, 2022).

[32] *Jardel Co., Inc. v. Hughes*, 523 A.2d 518, 527 (Del. 1987).

[33] *Ellis v. Tri State Realty Assocs. LP*, 2015 WL 993438, at *8 (Del. Super. Ct. Feb. 27, 2015).

Punitive damages serve a dual purpose, "to punish the person doing the wrongful act and to deter him, as well as others, from similar conduct in the future."[34] Considering this dual purpose, the Delaware Supreme Court held that such damages may be imposed "only after a close examination of whether the defendant's conduct is outrageous, because of evil motive or reckless indifference to the rights of others."[35] Under this framework, "[m]ere inadvertence, mistake, or errors of judgment are insufficient to sustain punitive damages."[36] As a result, conduct exhibiting negligence, and even gross negligence, will not justify the imposition of punitive damages.[37]

As an initial matter, the parties dispute multiple facts relevant to this litigation. Notably, Defendants, in their opening and reply brief, challenge whether the evidence establishes that they had notice of the missing pilot light cover.[38] Notice of the missing pilot light cover is probative of whether Defendants' conduct amounts to reckless indifference, and thus, is material to Plaintiff's punitive damages claim.[39]

---

[34] *Naples v. Miller*, 2009 WL 1163504, at *4 (Del. Super. Ct. Apr. 30, 2009) (quoting *Ringgold v. Kohl's Dep't Stores, Inc.*, 2006 WL 3842142, at *2 (Del. Super. Ct. Dec. 21, 2006)).

[35] *Jardel*, 523 A.2d at 529 (internal quotation marks and citations omitted).

[36] *Naples*, 2009 WL 1163504, at *4 (citing *id.* at 530).

[37] *Ellis*, 2015 WL 993438, at *9 (citing *Jardel*, 523 A.2d at 529-30).

[38] Defs.' Sum. J. Br. at 5, May 5, 2023 (D.I. 26) ("Plaintiff's evidence only reveals that there may have been a pilot light cover missing on the water heater before the fire. However, with regard to [Defendants'] knowledge of the missing pilot light cover, he offers only his own testimony that he orally notified Defendant Wayne Crosse, an allegation adverse to Defendants' interrogatory answers[.]"); Defs.' Reply Br. at 2, June 13, 2023 (D.I. 34) ("The defendants were <u>not</u> on notice of any missing pilot light cover or defect in the water heater before the fire." (emphasis in original)).

[39] *Bobcat N. Am., LLC v. Inland Waste Holdings, LLC*, 2019 WL 1877400, at *4 (Del. Super. Ct. Apr. 26, 2019) ("A fact is material if it might affect the outcome of the pled claim under the law governing such a claim.").

10

Accordingly, Defendants' own argument highlights genuine issues of material fact, rendering a grant of summary judgment inappropriate.

The inquiry here is limited to whether Defendants acted with reckless indifference to Plaintiff's rights, as there is no evidence presented on the record, nor has there been argument that judgment remains unwarranted here. Neither the evidence nor the briefs suggest that Defendants acted with evil motive, that is, maliciously or intentionally. Recklessness is present upon a showing that the "defendant acted negligently and had a reckless state of mind, such that he must have foreseen or should have foreseen the risk of harm that his conduct would create."[40] When the allegedly reckless conduct stems from an error of judgment, a plaintiff must show that "the precise harm which eventuated must have been reasonably apparent but consciously ignored in the formulation of the judgment."[41]

Viewing all facts and reasonable inferences in Plaintiff's favor, Defendants had notice that the Apartment's water heater did not have a pilot light cover.[42] According to Plaintiff, the pilot light cover had been missing since he first leased the Apartment in 2013.[43] Under these facts, it is reasonable to infer that a risk of fire was "reasonably apparent but consciously ignored" by Defendants.[44] Therefore, the question of punitive damages here will be presented to the trier of fact and Defendants' Motion for Summary Judgment on Claim for Punitive Damages is **DENIED**.

---

[40] *Naples*, 2009 WL 1163504, at *4.
[41] *Jardel*, 523 A.2d at 531.
[42] Defs.' Summ. J. Mot., Ex. B at 22:7-18.
[43] *Id.*
[44] *Jardel*, 523 A.2d at 531.

## C. DEFENDANTS' MOTION TO PRECLUDE PLAINTIFF'S PERSONAL PROPERTY DAMAGES

Plaintiff requests damages for personal property that he lost in the Apartment fire. To support this claim, Plaintiff seeks to testify as to the pre-fire value of his personal property "based off his familiarity and knowledge of the worth of the items[.]"[45] Plaintiff additionally seeks to admit the opinion of Sean Mehan, a fire damage restoration expert, on the salvage value of his property after the fire.[46]

Defendants move to preclude all evidence related to Plaintiff's property damages claim.[47] Defendants contend that a claim of personal property damages requires evidence of the pre- and post-incident value of Plaintiff's personal property. Defendants further maintain that both the before and after value of the personal property must be supported by competent expert testimony.

Plaintiff does not contest the before and after framework proposed by Defendants. Plaintiff, however, contends that expert testimony is not required to support the pre-fire valuation. In Plaintiff's view, an owner of property may testify as to its "before" value.

Defendants rely heavily upon *Storey v. Castner*[48] to support their view that: (1) personal property damages should be calculated by using the before-and-after formula; and (2) expert evidence is necessary to support estimates of both the pre- and post-incident value. As relevant here, *Storey* dealt with the valuation of an automobile after an accident. The Delaware Supreme Court held that "when it is not feasible to repair a damaged automobile, as is the case under the instant facts, the

---

[45] Pl.'s Resp. Br. at 3, May 31, 2023 (D.I. 31).
[46] *Id.*, Ex. 2.
[47] Though Defendants state they are moving for summary judgment, this Motion is truly stylized as a motion *in limine* to preclude Plaintiff from admitting evidence of damages. Accordingly, the Court should treat it as such.
[48] 314 A.2d 187 (Del. 1973).

measure of damages is the value of the car just before the accident and its salvage value immediately after the accident."[49] The *Storey* Court explained that "[e]stimates of such values must necessarily be produced directly from an expert witness."[50]

There are two issues with Defendants' reliance on *Storey*. First, Delaware case law contradicts *Storey's* holding that expert evidence is necessary to support a "before" valuation. *Storey* cites *Stuart v. Rizzo*[51] to support its assertion, yet the *Stuart* Court makes clear that "[a]n owner may testify as to the value of his vehicle before the accident—this on the theory that, being familiar with his property, he is presumed to know its worth in a general way."[52] In *Bozievich v. Moreau*,[53] this Court squarely addressed this contradiction. The *Bozievich* Court, relying on Delaware cases both before and after *Storey*, determined that an owner of an automobile may testify as to its "before" value.[54]

Second, Delaware authority makes clear that the valuation of damages in cases involving personal property differs from automobiles.[55] In cases involving the total loss of personal property, Delaware courts have taken the replacement value of the

---

[49] *Id.* at 191-92.

[50] *Id.* at 192.

[51] 242 A.2d 477 (Del. 1968).

[52] *Id.* at 480.

[53] 2019 WL 4962694 (Del. Super. Ct. Oct. 8, 2019).

[54] *Id.* at *1, n. 6, 7.

[55] *Chancy v. Ward*, 1996 WL 110529, at *2 (Del. Super. Ct. Jan. 23, 1996) ("Damage considerations for personal and household goods are distinctly different than those for other goods such as automobiles."); *Estate of Corrin*, 1993 WL 1500677, at *3 (Del. Ch. July 30, 1993) ("*Storey* holds that the measure of damages is value of the good immediately before damage less the value immediately afterwards. In an automobile case, this may be an appropriate, if harsh, way to render justice, but it hardly applies here.").

property and applied a discount to account for depreciation and other factors.[56] The amount to discount is subject to evidence provided by the parties.[57]

Accordingly, in following this line of cases, a discounted replacement value calculation will be used to measure Plaintiff's lost property damages. Plaintiff and his wife, as owners of the personal property, may testify the property value before the fire. Accordingly, Defendants' Motion to Preclude Plaintiff's Personal Property Damages is **DENIED**.

## IV. CONCLUSION

For the reasons explained above, the Court **GRANTS** in part and **DENIES** in part Defendants' Daubert Motion to Preclude Plaintiff's Liability Experts. Defendants' Motion for Summary Judgment on Claim for Punitive Damages and Defendants' Motion to Preclude Plaintiff's Personal Property Damages is **DENIED**.

---

[56] *Rafal v. Rafal*, 198 A.2d 177, 179 (Del. Ch. 1964); *see also Chancy*, 1996 WL 110529, at *2-3 (affirming trial judge's decision to take plaintiff's valuation of personal property and reduce it by roughly fifty percent to award damages); *Corrin*, 1993 WL 1500677, at *3 ("…I think the better way to handle this situation is for the executor to locate new mirrors similar to the ones that are missing, for the Corrins to inspect them to assure themselves of the similarity, and then for the offering price of the mirrors to be discounted by one-third[.]"); *Phillips v. Del. Power & Light Co.*, 201 A.2d 160 (Del. Super. 1964) ("One rule as to the measure of damages for such loss is the replacement value of the clothing and household articles adjusted to reflect actual value based on existing conditions. This method does not entitle plaintiffs to the value of new goods and articles, but takes into consideration the same kind of merchandise that had been in use for the same length of time and in the same condition."). In *Dippold Marble & Granite, Inc. v. Harleysville Mutual Insurance Company*, this Court cited the discounted replacement value theory of damages favorably but concluded it did not apply because a contractual provision controlled the calculation of damages. *Dippold Marble & Granite, Inc. v. Harleysville Mut. Ins. Co.*, 2014 WL 3587261, at *2-3 (Del. Super. Ct. July 21, 2014).

[57] *See Rafal*, 198 A.2d at 179 ("Unless the parties want to offer additional evidence directed to the discount factor, the foregoing approach will be adopted by the court.").

Given these rulings, the Court will hold a conference to discuss the status of this case going forward.   Parties are to reach out to Chambers for scheduling.

**IT IS SO ORDERED.**

Danielle J. Brennan, Judge

Cc: All parties via File&Serve Express