Linda S. PERRY, Plaintiff Below, Appellant,

v.

Kristin M. BERKLEY, Marie M. Rinehart, Harold M. Williams, and Nationwide Insurance Company, Defendants Below, Appellees.

No. 445, 2009.

Supreme Court of Delaware.

Submitted: April 13, 2010.

Decided: May 11, 2010.

---

**29.** *Citrin v. Int'l Airport Centers LLC,* 922 A.2d 1164, 1167 (Del.Ch.2006).

Michael I. Silverman, Esquire, Silverman McDonald & Friedman, Wilmington, Delaware, for appellant.

Colin M. Shalk, Esquire (argued), Joshua H. Meyeroff, Esquire, Casarino Christman Shalk Ransom & Doss, P.A., Wilmington, Delaware, for appellees, Kristin M. Berkley and Marie M. Rinehart.

Before STEELE, Chief Justice, HOLLAND and RIDGELY, Justices.

HOLLAND, Justice:

This is an appeal from a final judgment entered by the Superior Court. This matter involves a claim for personal injuries filed by the plaintiff-appellant, Linda S.

Perry ("Perry") against the defendants-appellees, Kristin M. Berkley ("Berkley") and Marie M. Rinehart ("Rinehart") as a result of a three-car accident that occurred on December 10, 2005. Perry initially filed a complaint that alleged negligence against Berkley and negligent entrustment against Rinehart. The Superior Court permitted Perry to file an amended complaint in which she added an additional defendant, Harold M. Williams ("Williams") and asserted a claim of negligence against him.[1] The Superior Court also permitted Perry to file a second amended complaint to include Nationwide Insurance Company ("Nationwide") as a defendant. Perry asserted a claim for uninsured motorist benefits against Nationwide.

The defendants filed a motion *in limine* seeking to exclude any testimony by Perry's expert witness, Dr. Matthew Eppley ("Dr. Eppley"), and any testimony from Perry regarding her subjective opinion as to the significance to her alleged injuries of the several impacts during the three-car accident. The Superior Court denied the defendants' motion *in limine* in part and granted the defendants' motion *in limine* in part. The Superior Court held that Perry could testify about her subjective opinion of the relative significance of the accident. That ruling became moot, however, after the Superior Court excluded the testimony of Dr. Eppley. The Superior Court then dismissed Perry's case due to lack of evidence as to the causation of her injuries.

Perry filed a timely appeal. Berkley and Rinehart filed a cross appeal. Perry asserts that the trial judge abused his discretion when he excluded the expert testimony of Dr. Eppley on the basis that Dr. Eppley's opinion lacked a proper factual foundation. In the cross appeal, the defendants allege that the trial judge abused his discretion when he ruled that Perry would be permitted to offer her subjective opinion about the relative forces of the vehicular impacts on the injuries she allegedly sustained as a result of the three-car accident.

We have concluded that Perry's argument is without merit. The record reflects that the Superior Court properly exercised its discretion in ruling that Dr. Eppley's expert testimony was inadmissible. Therefore, it is unnecessary to address the merits of the cross appeal. The judgment of the Superior Court is affirmed.

### Facts [2]

On December 10, 2005, Perry was driving southbound on I–95 toward the Christiana Mall in Delaware. As Perry began to move her vehicle to the right to exit onto the ramp for the Christiana Mall, she saw a pickup truck in front of her. Williams was the driver of the pickup truck. As Perry drove behind Williams, he applied his brakes and slid to avoid stopping traffic. At the time Williams hit his brakes, he estimated that he was driving at least sixty miles per hour. Perry then slammed on her brakes, but her vehicle slid into the rear of Williams' truck.

After the first impact with Williams, a second car, driven by Berkley and owned by Rinehart, made contact with the rear of Perry's car. Perry testified that the second impact "jerked me back real hard and I banged my head on the sun visor, the mirror, and broke that." The impact also forced Perry's car into Williams' vehicle a second time.

---

1. Perry settled with Williams.

2. The relevant facts are not in dispute. This recitation relies upon the presentment in the appellees' brief.

Perry identified Dr. Eppley as her only medical expert for trial. Perry alleged that she sustained both lumbar and cervical injuries as a result of the accident. Dr. Eppley did not treat Perry for any neck or cervical complaints post-accident, nor did he opine as to whether the cervical issues were causally related to the accident. Dr. Peter Witherell ("Dr. Witherell"), Perry's pain management physician, was the only physician who treated her cervical complaint post-accident.

However, Dr. Witherell was not identified as an expert witness in the pretrial stipulation. In fact, Perry's attorney advised the Superior Court at the motion *in limine* hearing that only Dr. Eppley would offer medical testimony for the plaintiff at trial. Accordingly, there would have been no expert testimony at trial that Perry's cervical complaints or treatment were related to the accident.

Dr. Eppley issued a report on May 7, 2007. In his report, Dr. Eppley opined:

> Given that Mrs. Perry's earlier problems were cervical and she had not had any complaints regarding her lumbar spine prior to the 2005 motor vehicle accident, in my opinion that trauma is causally related to the herniations seen thereafter.... Mrs. Perry does have permanent injuries to cervical and lumbar spines. The latter is entirely related to the December 2005 accident.

Two years later, at his deposition on June 15, 2009, Dr. Eppley stated that his knowledge of Perry's pre-accident medical condition and treatment was based on the records in his possession at the time of his report and "basically from what she has told me." Dr. Eppley testified that he had no way of knowing whether what Perry told him was accurate but that he assumed it was truthful. Although Perry told Dr. Eppley that she had arthritis in her spine, Perry never informed Dr. Eppley of her cervical and lumbar conditions or her treatment for pain before the December 10, 2005 accident or the earlier MRI documenting similar complaints.

Dr. Eppley also testified that he was unaware of Dr. Witherell's pre-accident treatment records, which the defendants planned to enter into evidence at trial without objection from Perry. Those records reflect that Perry had pain complaints in the same regions of her back for which she complained of pain as a result of the accident. Dr. Eppley also testified he had no knowledge that Perry was actively undergoing treatment for her lumbar spine with Dr. Witherell at the time of the accident, had no knowledge that Dr. Witherell had administered thirty-five injections for pain to Perry's cervical and lumbar spines in the two years from July 12, 2003 to November 23, 2005, and had no knowledge of a May 21, 2004 MRI of Perry's lumbar spine.

The defendants filed a motion *in limine* seeking to preclude Perry's testimony as to the significance of both impacts. The defendants also sought to exclude Dr. Eppley's expert testimony as to causation. The day of trial, the Superior Court heard oral argument on the motions. The Superior Court denied the defendants' motion *in limine* to preclude any testimony of Perry's subjective opinion as to the significance of both impacts.

The trial judge then addressed the defendants' contention that Dr. Eppley's expert testimony about causation of Perry's alleged injuries should be barred under the United States Supreme Court holding in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*[3] that is now reflected in the text

3. *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469

of Delaware Rule of Evidence ("D.R.E.") 702.[4] The trial judge expressed his concern about the factual basis for Dr. Eppley's opinion:

[Y]our doctor, Eppley, predicates his opinion as to causation on the lack of any complaints by your client [Perry] as to her low back prior to the accident, ... and that the trauma was causally related to the herniation.

I mean, how can that opinion be valid when he didn't know—when you client didn't tell him about the previous low-back complaints and it was never disclosed to him that she had been diagnosed with a herniation before the accident?

As the hearing continued, the trial judge's concern was not assuaged:

The problem that I have with this testimony is that the previous hern—the herniation previous to this is not disclosed to Dr. Eppley so that he could focus an opinion as to whether her symptoms and what he saw was likely the result of the automobile collision or not.

Perry argued that Dr. Eppley's lack of knowledge of Perry's prior back condition and treatments for pain was a credibility issue for cross-examination. The trial judge disagreed:

I mean, *Daubert*, it's really a *Daubert* problem. This motion, as I see it, doesn't focus on qualifications or competence or methodology or science involved, it focuses on factual foundation. And if the factual foundation isn't there, the opinion is not valid.

The trial judge then ruled that Dr. Eppley's expert testimony was inadmissible under *Daubert* and D.R.E. 702(1) for lack

of factual knowledge of Perry's pre-existing back condition:

The MRI—his [Dr. Eppley's] opinion is thus predicated on a fact which is incorrect, namely, that there were no low-back complaints prior to the automobile accident, and it is without any awareness that the herniation that he treated existed prior to the accident. That, that indicates to me, and I find that his opinion simply doesn't have an adequate basis in fact that I can allow it to go forward to the jury.

As a result of the Superior Court's ruling, Perry could not offer any medical expert testimony as to causation of her injuries. Perry then sought a continuance. The defendants opposed the continuance on the basis that Perry's counsel was on notice of the deficiencies with Dr. Eppley's opinion prior to his trial deposition.

Although Dr. Eppley's report mentions that Perry had no prior complaints before the accident and does not address the May 21, 2004 MRI, the defendants' attorney sent a copy of the June 1, 2007 report of the defendants' expert, Dr. Michael Brooks ("Dr. Brooks"), to Perry's attorney on August 7, 2007. In that report, Dr. Brooks highlighted Perry's prior back condition and the May 21, 2004 MRI. Dr. Brooks issued an amended report on September 11, 2007. The defendants' attorney also sent a copy of that report to Perry's counsel on September 21, 2007. In a letter from Perry's attorney to Dr. Eppley on August 4, 2006, Dr. Eppley was also made aware of the May 21, 2004 MRI. Dr. Eppley apparently did not read those communications from Perry's attorney because at his 2009 deposition Dr. Eppley testified that he had no knowledge of Perry's pre-existing back condition and prior treatments for pain.

(1993).

4. D.R.E. 702.

The trial judge denied the continuance request. In view of the fact that she had no other medical expert to offer testimony as to causation, Perry agreed to have the trial judge enter a final judgment of dismissal so that she could appeal the Superior Court's ruling on the defendants' motion *in limine.*

### Parties' Contentions

Perry contends that the defendants' motion *in limine* should have been denied because the problem they attributed to Dr. Eppley's testimony goes to "the weight and credibility of the testimony rather than the admissibility." The defendants respond that the Superior Court properly precluded Dr. Eppley from testifying because "Dr. Eppley's lack of knowledge goes directly to the substance of his testimony, not his credibility. Without knowledge of Perry's relevant medical history, Dr. Eppley's causation opinion was necessarily based upon an improper factual predicate and could not be placed before a jury."

### Standard of Review

■■■ This Court has adopted the United States Supreme Court holding in *Daubert,* which requires that an expert's opinion be based upon a proper factual foundation and sound methodology to be admissible, as the correct interpretation of D.R.E. 702.[5] Pursuant to that rule, the trial judge acts as the gatekeeper to determine whether a proffered expert's testimony satisfies D.R.E. 702 and is thus admissible as evidence.[6] In making that determination, the trial judge has "broad latitude" to decide whether the proffered expert testimony is sufficiently reliable and relevant.[7] Although Perry suggests that the proper standard of review is *de novo,* this Court reviews a trial court's decision to admit or exclude expert testimony under D.R.E. 702 for an abuse of discretion.[8]

### Expert Testimony Admission Standards

D.R.E. 702 is identical to the corresponding current version of the Federal Rule that bears the same number. On December 21, 2000, Federal Rule of Evidence ("F.R.E.") 702 was amended in an attempt to codify the United States Supreme Court trilogy of cases known as *Daubert,*[9] *Joiner*[10] and *Kumho.*[11] The amendment sets forth three standards that must be met before a challenged expert's testimony can be admitted. Federal Rule 702 in its entirety states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion

5. *See M.G. Bancorporation v. Le Beau,* 737 A.2d 513, 521 (Del.1999); *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 593–95, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

6. *Price v. Blood Bank of Del., Inc.,* 790 A.2d 1203, 1210 (Del.2002) (citing *M.G. Bancorporation v. Le Beau,* 737 A.2d at 521).

7. *Gen. Motors Corp. v. Grenier,* 981 A.2d 531, 536 (Del.2009) (citation omitted).

8. *Spencer v. Wal–Mart Stores East, LP,* 930 A.2d 881, 888 (Del.2007).

9. *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

10. *Gen. Elec. v. Joiner,* 522 U.S. 136, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997).

11. *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

or otherwise, if (1) *the testimony is based upon sufficient facts or data,* (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.[12]

The issue in Perry's case is controlled by subsection (1). The Advisory Committee Note to the 2000 Amendment explains the purpose of subsection (1) of the amended rule:

> Subpart (1) of Rule 702 calls for a quantitative rather than qualitative analysis. The amendment requires that expert testimony be based on sufficient underlying 'facts or data'.... There has been some confusion over the relationship between Rules 702 and 703. The amendment makes clear the sufficiency of the basis of an expert's testimony is to be decided under Rule 702. Rule 702 sets forth the overarching requirement of reliability, and an analysis of the sufficiency of the expert's basis cannot be divorced from the ultimate reliability of the expert's opinion. In contrast, the 'reasonable reliance' requirement of Rule 703 is a relatively narrow inquiry. When an expert relies on inadmissible information, Rule 703 requires the trial court to determine whether that information is of a type reasonably relied on by other experts in the field. If so, the expert can rely on the information in reaching an opinion. However, *the question whether the expert is relying on a sufficient basis of information— whether admissible information or*

not—is governed by the requirements of Rule 702.[13]

Further illuminating the drafters' intent in including subsection (1) in the 2000 amendments to F.R.E. 702, the *Federal Rules of Evidence Manual* explains that:

> If an expert has engaged in insufficient research, or has ignored obvious factors, the opinion must be excluded under this prong of the test. In other words, the expert must have a sufficient foundation for the testimony. Judge Becker has stated that the foundation requirement, while "well developed in the case law and in the experience of trial lawyers and judges" has not been expressly grounded in one of the Federal Rules.[14] The Advisory Committee recognized that there was a gap in the Rules, and also that the Court in *Daubert* implicitly required a foundation requirement for expert testimony. The Advisory Committee decided to avoid any ambiguity and to make the foundation requirement a specific part of Rule 702.[15]

Although F.R.E. 702 provides no procedural guidelines or instructions to trial courts with respect to defining "sufficient facts or data," a review of several treatises is didactic. First, *The New Wigmore,* in its volume on Expert Evidence, explains that an expert's conclusions are necessarily dependent upon an understanding of the factual foundations of the case on which he or she is to opine:

> In contrast to the background information on which an expert draws is information about the facts of the case at bar. On what adjudicative facts—data about the specifics of the litigated case—can

---

**12.** Fed.R.Evid. 702.

**13.** Fed.R.Evid. 702 Advisory Committee Notes (2000) (emphasis added).

**14.** *Elcock v. Kmart Corp.,* 233 F.3d 734 (3d Cir.2000).

**15.** 3 Stephen A. Saltzburg et al., *Federal Rules of Evidence Manual* § 702.02[10], at 702–48 (8th ed. 2002).

an expert opinion be based? ... Intertwined with the question of the types of information on which expert testimony may be based is the question of validity, the necessary degree of reliability that expert evidence must have before being permitted in court. Essentially, there are three related questions: First, on what categories of material may experts rely? Second, how reliable must the expert's case-specific information be to constitute a permissible basis for a conclusion? Third, to what extent must the general background information and methods put to use by the expert be proven valid? These three inquiries are necessarily linked. The legitimacy of the basis for an expert's conclusions cannot be disentangled from the validity of these conclusions. *If an expert bases an opinion on an erroneous factual foundation, the inaccurate premises invalidate the conclusion even if the expert's methods are generally valid.*[16]

Similarly, *Moore's Federal Rules Pamphlet* explains that where an expert opinion is "fundamentally unsupported by the facts of the case," it should be excluded on "the ground that it will be of no assistance to the fact finder in deciding the case."[17] *Weinstein's Federal Evidence* states that under F.R.E. 702(1), "[t]o be admissible, expert opinions must be based on sufficient facts or data. Thus, an expert's testimony is inadmissible if it is based on suppositions rather than facts."[18] That treatise has collected various case law addressing the standard for admissibility under this section.[19]

The Virginia Supreme Court's analysis of its common law equivalent to Rule 702 is also helpful to this inquiry. Virginia law contains a common law requirement that a proffered expert witness have a sufficient understanding of the case's factual founda-

**16.** David H. Kaye, David E. Bernstein and Jennifer L. Mnookin, *The New Wigmore: Expert Evidence* § 3.1 (2004) (emphasis added).

**17.** 2 James W. Moore et al., *Moore's Federal Rules Pamphlet* § 702.6, at 565 (2010) (citing *Children's Broadcasting Corp. v. Walt Disney Co.*, 357 F.3d 860, 865 (8th Cir.2004)).

**18.** 4 *Weinstein's Federal Evidence* § 792.95[2][b] (2d ed. 2009).

**19.** *See, e.g., United States v. Day*, 524 F.3d 1361, 1368–69 (D.C.Cir.2008) (expert testimony about defendant's mental state was properly excluded because expert's opinions were not based on medical diagnosis, but on unsupported conclusions, mistakes, and refusal to consider defendant's past behavior); *Hathaway v. Bazany*, 507 F.3d 312, 318–19 (5th Cir.2007) (trial court properly excluded proffered expert testimony, because it relied on insufficient factual support and "a host of unsupported conjectures that falls far short of methodology"); *Minn. Supply Co. v. Raymond Corp.*, 472 F.3d 524, 544 (8th Cir.2006) ("As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis of the opinion upon cross-examination. Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded."); *Margolies v. McCleary, Inc.*, 447 F.3d 1115, 1120–21 (8th Cir.2006) (expert's opinion on estimated damages was both reliable and relevant and thus admissible in breach of contract case; defendant's challenges to factual basis of that opinion properly went to weight of evidence, not its admissibility); *Marvin Lumber and Cedar Co. v. PPG Indus.*, 401 F.3d 901, 916 (8th Cir.2005) (challenges to factual basis of expert's analysis, not its evidentiary reliability, go to weight of testimony, not its admissibility, and careful direct and cross-examination are appropriate means of attacking "shaky but admissible" evidence); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800–01 (6th Cir.2000) ("expert's conclusions regarding causation must have a basis in established fact and cannot be premised on mere suppositions"; however, mere weaknesses in factual basis of expert's opinion bear on the weight of the evidence rather than its admissibility).

tion, in order for his or her testimony to be admitted at trial. In *Vasquez v. Mabini*,[20] in reviewing the admission of expert testimony, the Virginia Supreme Court concluded that "[e]xpert testimony founded upon assumptions that have no basis in fact is not merely subject to refutation by cross-examination or by counter-experts; it is inadmissible."[21] Further, "[f]ailure of the trial court to strike such testimony upon a motion timely made is error subject to reversal on appeal."[22]

### Superior Court Ruling

Perry argues on appeal that the Superior Court should not have barred the testimony of her expert, Dr. Eppley, who proposed to testify on the issue of causation. At the hearing on the motion to exclude this testimony, Perry's counsel argued that "[i]f the doctor has some of the history wrong, then that's something that the defense I'm sure will argue when they have their chance to argue, but I don't think it goes to Dr. Eppley's ability to testify." The Superior Court disagreed, responding "it goes to the ability of any expert to testify if the factual predicate for the opinion is wrong.... [I]t's really a *Daubert* problem. This motion ... doesn't focus on qualifications or competence or methodology or the science involved, it focuses on the factual foundation. And if the factual foundation isn't there, the opinion is not valid." Ultimately, after hearing argument by each side, the Superior Court granted the defendants' motion to exclude Dr. Eppley's testimony, explaining that "his opinion simply doesn't have an adequate basis in fact that I can allow it to go forward to the jury."

### Testimony Properly Excluded

██ The record in this case is unusual because Perry's attorney never asked Dr. Eppley for an updated opinion based upon Perry's correct medical history. The record reflects Dr. Eppley was never asked, either at his deposition or by way of a supplemental report, to render an expert opinion on causation based upon Perry's pre-existing back condition and treatments for pain. The trial judge questioned why Perry never asked Dr. Eppley to address the improper factual predicate for the opinion in his 2005 report, *i.e.*, no back condition prior to the accident.

██ Perry's answer by way of argument was that Dr. Eppley's lack of accurate knowledge about her pre-existing back condition goes to the weight and credibility, rather than admissibility, of Dr. Eppley's testimony. That argument is without merit. Under D.R.E. 702, the trial judge must make a preliminary determination that the expert witness is able, as a factual matter, to provide the proposed opinion. It is this foundational determination to which subsection D.R.E. 702(1) refers. If an expert's proposed testimony is not based upon "sufficient facts or data," the expert must be disqualified.

██ Weight and credibility challenges, on the other hand, relate to an expert's skill or knowledge in being able to tie the facts of the case to the opinion he or she plans to give. "Once the trial court has determined that a witness is competent to testify as an expert, challenges to the expert's skill or knowledge go to the weight to be accorded the expert testimony rather

**20.** *Vasquez v. Mabini*, 269 Va. 155, 606 S.E.2d 809 (2005).

**21.** *Id.* at 811 (citing *Va. Financial Assoc. v. ITT Hartford Group*, 266 Va. 177, 585 S.E.2d 789, 792 (2003)).

**22.** *Id.*

than its admissibility."[23] The Superior Court properly held that Dr. Eppley did not have a correct understanding of the facts of the case, thereby completely undermining the foundation of his expert opinion and not merely his credibility.

■ We recognize that, as a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is for the opposing party to challenge the factual basis of the expert opinion on cross-examination.[24] When the expert's opinion is not based upon an understanding of the fundamental facts of the case, however, it can provide no assistance to the jury and such testimony must be excluded.[25] Perry's case was not within the general rule's application because Dr. Eppley rendered an expert opinion based upon a *completely incorrect* case specific factual predicate. As the Virginia Supreme Court stated in Vasquez, "[e]xpert testimony founded upon assumptions that have no basis in fact is not merely subject to refutation by cross-examination or by counter-experts; it is inadmissible."[26]

Perry's prior medical history was pivotal to the issue of whether the car accident caused her back injuries. Without this basic case specific information, Dr. Eppley rendered a causation opinion without an accurate factual predicate. Given Dr. Eppley's complete lack of knowledge of the most fundamental relevant facts, the trial judge properly exercised his discretion when he determined that Dr. Eppley's testimony was inadmissible under *Daubert* and D.R.E. 702(1).[27]

### No Causation Evidence

■ Perry failed to offer any expert testimony that the defendants' conduct caused her alleged injuries in whole or in part. Therefore, Perry could not establish a *prima facie* case of negligence against the defendants. Accordingly, the trial judge properly dismissed her case for failure to prove causation, an essential element of her case.[28]

### Conclusion

The judgments of the Superior Court are affirmed.

**23.** *Sylla–Sawdon v. Uniroyal Goodrich Tire Co.*, 47 F.3d 277, 283 (8th Cir.1995) (quoting *Fox v. Dannenberg*, 906 F.2d 1253, 1256 (8th Cir.1990)).

**24.** *Porter v. Turner*, 954 A.2d 308, 313 (Del. 2008); *see also Minn. Supply Co. v. Raymond Corp.*, 472 F.3d 524, 544 (8th Cir.2006).

**25.** *Minn. Supply Co. v. Raymond Corp.*, 472 F.3d at 544.

**26.** *Vasquez v. Mabini*, 269 Va. 155, 606 S.E.2d 809, 811 (2005).

**27.** *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590 n. 9, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) (expert testimony is reliable only where expert has knowledge of relevant facts to render opinion).

**28.** *Kardos v. Harrison*, 980 A.2d 1014, 1019 (Del.2009) (dismissing plaintiff's case where expert opinion was speculative).