# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE, )
)
v. ) I.D. No. 2311012713
)
JEREMIAH HANDY, )
)
Defendant. )
)

## OPINION AND ORDER

Submitted: October 24, 2025
Decided: January 7, 2026

Kevin Gardner, Deputy Attorney General, Department of Justice, Georgetown, Delaware, *Attorney for the State of Delaware.*

Shae Woodburn, Deputy Attorney General, Department of Justice, Georgetown, Delaware, *Attorney for the State of Delaware.*

Stephen Welsh, Esquire, Gill, Welsh & Chamberlain, Georgetown, Delaware, *Attorneys for Defendant.*

**CONNER, J**

## FACTUAL AND PROCEDURAL BACKGROUND

Jeremiah Handy ("Defendant") is charged with Murder First Degree, Attempted Murder First Degree, Possession of a Deadly Weapon During the Commission of a Felony (two counts), and Possession of a Deadly Weapon by a Person Prohibited.[1] Defendant brings two issues before the Court. First, Defendant asks the Court to dismiss the indictment due to prosecutorial misconduct.[2] If the Court does not dismiss the indictment, Defendant asks the Court to order the disclosure of the Grand Jury transcript.[3] Second, Defendant asks the Court to grant the Motion in Limine to exclude the State's expert, Senior Corporal Smith ("Cpl. Smith"), from testifying at trial.[4]

In the early morning of November 24, 2023, Gabriel Dorman and Ryan Wilkerson arrived at Defendant's residence according to the ring camera footage from the Handy residence. Driving a 2010 Honda ATV, Dorman and Wilkerson stop and throw an object through the window of Defendant's home.[5] Dorman and Wilkerson then leave the Handy's residence and drive away. Defendant entered his 2020 Mercedes-Benz SUV and left his residence. Shortly thereafter, Dorman and Wilkerson returned to the Handy's residence and threw a second object at the home.[6]

---

[1] Def.'s Mot. to Dismiss, D.I. 86, at ¶ 1.
[2] *Id.* ¶ 93.
[3] *Id.* ¶ 94.
[4] Def.'s Suppl. to Mot. in Lim., D.I. 87, at 1.
[5] *Id.* ¶ 30.
[6] *Id.*

Dorman and Wilkerson then drove through the Handy's front lawn and onto the roadway with the headlights off. Seconds later, Defendant's vehicle, while traveling at 97 miles per hour, collided into the rear of the ATV.[7] Dorman was ejected from the ATV. His body came to rest approximately 334 feet from the point of impact.[8] Dorman succumbed to his injuries at the scene. Wilkerson was transported to the Christiana Hospital with multiple injuries.

## DISCUSSION

### I.    THE MOTION TO DISMISS

As mentioned above, Defendant asks the Court to dismiss the indictment. If the Court does not dismiss the indictment, Defendant asks the Court to order the release of the Grand Jury transcript.

The Court DENIES the Motion to Dismiss because the State's conduct, though not condoned by the Court, does not rise to the level of misconduct that warrants dismissal. Defendant fails to cite any case law that supports dismissing the present case due to prosecutorial misconduct. The State, on the other hand, cited several cases supporting the denial of the Motion.

In the case, *State v. MacColl*, the Court held that an indictment will not be dismissed unless it "does not provide notice or allow for a defense or otherwise is

---

[7] State's Resp. to Def.'s Mot. to Dismiss, D.I. 90, ¶ 2.
[8] *Id.* ¶ 2.

legally deficient."[9] Furthermore, the Court found that "[u]nless there is a stipulated record, or unless immunity issues are implicated, a pretrial motion to dismiss an indictment is not a permissible vehicle for addressing the sufficiency of the government's evidence."[10] Factually, *State v. MacColl* is different from the case at hand. In *MacColl*, a police officer sought the dismissal of an indictment and the exclusion of statements he made during an incriminating interview, because his statements were made under penalty of termination and protected. The Court denied the motion, stating that the defendant was not entitled to the privileges he claimed. In the present case, the State argues that Defendant has not met the burden to dismiss the indictment because Defendant has not cited to any flaws in the indictment that fail to provide notice, allow for a defense, or is otherwise legally deficient.[11]

In *State v. Taylor*, the defendant was convicted of Murder First Degree, Gang Participation, two counts of Reckless Endangerment, Possession of a Firearm During the Commission of a Felony, two counts of Aggravated Menacing, and Assault First Degree.[12] He appealed his conviction. The Supreme Court reversed the conviction and remanded the case for a new trial.[13] The defendant filed a motion to dismiss his indictment because a new trial would violate the Double Jeopardy Clause of the

---

[9] 2022 WL 2388397, at *2 (Del. Super. Ct. 2022), *aff'd,* 312 A.3d 674 (Del. 2024).
[10] *Id.*
[11] State's Resp. to Def.'s Mot. to Dismiss, D.I. 90, ¶ 17.
[12] *State v. Taylor*, 2022 WL 2374299, at *1 (Del. Super. Ct. 2022)(quoting *State v. Robinson*, 209 A.3d 25, 59 (Del. 2019)).
[13] *Id.*

4

Delaware Constitution due to alleged prosecutorial misconduct in a pretrial hearing.[14] The Court denied the defendant's motion.[15] The Supreme Court determined that dismissal of an indictment is inappropriate where "[a] remedy less severe than dismissal" would ensure the defendant's "right to a fair trial [is] protected."[16] Any relief "should be tailored to the injury suffered and should not unnecessarily infringe upon society's competing interest in the administration of criminal justice."[17] The Court found that even if prosecutorial misconduct were found, the indictment would not be dismissed.[18] A new trial is the appropriate relief, which has already been afforded to the defendant.[19] In the present case, the State argues that Defendant has not established that he suffered prejudice that would affect his future trial date.[20]

The most notable case cited by the State is *State v. Robinson*, where the Court found that even though the State committed prosecutorial misconduct, the misconduct did not warrant the dismissal of the indictment.[21] Without obtaining a search warrant, the State searched and seized all documents from the defendant's

---

[14] *Id.*
[15] *Id.*
[16] *Id.* at *6 (quoting *Robinson*, 209 A.3d at 59).
[17] *Id.* (quoting *Bailey v. State*, 521 A.2d 1069, 1084 (Del. 1987)).
[18] *Id.*
[19] *Id.*
[20] State's Resp. to Def.'s Mot. to Dismiss, D.I. 90, ¶ 37.
[21] *Robinson*, 209 A.3d at 60.

cell.[22] The State then examined each letter, which contained privileged attorney-client communications and the defendant's own personal notes regarding trial strategy.[23] Although a clear Sixth Amendment violation, the Court found that even though they do not condone the State's misconduct, the Court must "carefully balance the competing interests of protecting the constitutional rights of defendants against the competing interests of all Delaware citizens (including victims and their families) in the administration of criminal justice."[24] Dismissal is the most extreme remedy, and a less extreme remedy can be implemented to ensure the defendant has a fair trial.[25] The State deliberately violated the defendant's Sixth Amendment right and the defendant suffered actual prejudice as a result of the violation.[26] Nonetheless, the Court found that dismissal of the indictment was not warranted.

In the present case, Defendant alleges prosecutorial misconduct because the investigation was "conducted in a manner in which crucial evidence was either negligently ignored, edited/sanitized, and/or misrepresented in an effort to support the initial rush to judgment."[27] First, Defendant argues that the State misled the Court about the evidence from the Mercedes Air Bag Control Module.[28] In response

---

[22] *Id.* at 29.
[23] *Id.*
[24] *Id.* at 59.
[25] *Id.*
[26] *Id.* at 60.
[27] Def.'s Mot. to Dismiss, D.I. 86, at ¶ 20.
[28] *Id.* ¶ 21-36.

to a motion to modify bond, the State represented that there was no evidence of braking on the Airbag Control Module.[29]  However, the Airbag Control Module shows that at -0.5 and at 0.0, the Service Brake Activation was on.[30]  Additionally, Defendant's speed dropped from 101 miles per hour to 97 miles per hour.[31]  Nevertheless, the State continued to represent to the Court that Defendant did not brake prior to the collision.  Defendant argues this conduct violates Rule 3.8(d)(1) of the Delaware Professional Conduct, a rule that requires prosecutors to disclose all evidence necessary to negate the guilt of the accused.[32]  Defendant argues that the State also violated Rule 3.3(1) of the Delaware Professional Rules of Conduct, which states that a lawyer shall not make a false statement of fact or law to a tribunal.[33]  Defendant further alleges that the State's misrepresentation is a *Brady* violation.[34]

In response to Defendant's argument, the State concedes that the Airbag Control Module shows that the brakes were applied 0.5 seconds prior to impact.[35]  However, the State argues that the anti-lock brakes were not activated, which shows there was no "hard" braking.[36]  Defendant's speed dropped from 101 miles per hour

---

[29] *Id.* ¶ 21, 23.
[30] *Id.* ¶ 29-30.
[31] *Id.* ¶ 30.
[32] *Id.* ¶ 32.
[33] *Id.* ¶ 34.
[34] *Id.* ¶ 35.
[35] State's Resp. to Def.'s Mot. to Dismiss, D.I. 90, ¶ 35.
[36] *Id.* ¶ 36.

7

to 97 miles per hour in a 25 miles per hour zone.[37]  Therefore, the State argues that there was no prosecutorial misconduct.[38]  Furthermore, Defendant did not suffer prejudice because the Court lowered Defendant's bond and Defendant has since been released while trial is pending.[39]

Defendant also alleges that the State violated several provisions of the Delaware Code.[40]  First, 11 *Del. C.* § 8402(A) and 1 Delaware Administrative Code § 801-26.0 require officers to wear a body-worn camera while on duty and in a role likely to encounter the public.  Section 201-26.4 of the Delaware Administrative Code states that the body-worn camera shall be activated to record contacts with citizens during the performance of duties.  Section 201-26.11 of the Delaware Administrative Code outlines that officers shall not edit body-worn camera footage.  Lastly, 1 Delaware Administrative Code § 801-26.6 and § 801-26.7 state that the body-worn camera shall remain activated until the contact is complete, and if it is not, the officer shall document the reason for the non-compliance.  Defendant argues that the State has removed two minutes and fifty-three seconds of evidence from an officer's body-worn camera footage.[41]  Additionally, there are "blackouts" in the

---

[37] *Id.*
[38] *Id.*
[39] *Id.* ¶ 36.
[40] Def.'s Mot. to Dismiss, D.I. 86, ¶ 37-40.
[41] *Id.* ¶ 56.

8

footage.[42] The State has not provided documentation or notification that the footage has been modified.[43]

The State argues that the body-worn cameras were redacted pursuant to Delaware Law.[44] Delaware Criminal Procedure Rule 16(c)(1) permits the State to redact evidence if it relates to personal identifying information.[45] Under this rule, a Defendant may file a motion seeking disclosure of the redacted information.[46] Additionally, the Victims/Witness Bill of Rights states that unless a victim or witness waives confidentiality, the State may not disclose "the residential address, telephone number or place of employment" of a victim, a witness, a member of a victim's family, or a member of a witness's family, unless the disclosure is the site of the crime.[47] Furthermore, the State alleges that it was disclosed to Defendant that some of the materials had been redacted to exclude personal identifying information of victims, witnesses, or members of their family.[48] The State also alleges that they informed Defendant that if Defendant believes there is good cause for disclosure,

---

[42] *Id.*

[43] *Id.* ¶ 57.

[44] State's Resp. to Def.'s Mot. to Dismiss, D.I. 90, ¶ 26-29.

[45] *Id.* ¶ 27 (*see also* Super. Ct. Crim. R. 16(C)).

[46] Super. Ct. Crim. R. 12(C).

[47] 11 Del. C. § 9403, 9423 (*see also* State's Resp. to Def.'s Mot. to Dismiss, D.I. 90, ¶ 28).

[48] *Id.* ¶ 30.

Defendant should file a motion with the Court[49] or request the Court conduct an in-camera review[50] to determine if a violation occurred.

Additionally, the State argues that the portion of Defendant's Motion addressing the body-worn camera is better addressed as a motion for discovery violations.[51] The State cites to *State v. Freeman*, where the Court denied a Defendant's motion to dismiss for prosecutorial misconduct based on a discovery violation.[52] In *Freeman*, the State disclosed discovery four days prior to the start of trial. The State specifically cites to a footnote in *Freeman*, where the Court stated, "in reviewing the case law regarding alleged prosecutorial misconduct, [the Court] was unable to locate a case where a Defendant made a motion for prosecutorial misconduct *prior* to trial."[53]

The Motion to Dismiss must be DENIED for several reasons. Even though the State did not initially examine all evidence collected from the investigation, dismissal is not warranted. Although the state's conduct can be labeled as slipshod, it does not rise to the same level of prosecutorial misconduct in *State v. Robinson*. As mentioned above, the Court in *Robinson* denied the motion to dismiss, despite the deliberate prosecutorial misconduct. Dismissing the indictment is not a remedy

---

[49] *Id.*
[50] *Id.*
[51] *Id.* ¶ 25.
[52] 2023 WL 2879321, at *3 (Del. Super. Ct. 2023).
[53] *Id.* at *2 n. 12 (*see also* State's Resp. to Def.'s Mot. to Dismiss, D.I. 90, ¶ 25).

tailored to the facts of this case. The trial is scheduled to start on May 26, 2026. Additionally, Defendant's bail was reduced despite the State's representation regarding the brakes. Defendant is not incarcerated while waiting for trial. This conduct does not warrant the Court to dismiss the indictment against Defendant. Second, the State has provided Defendant and the Court reasoning as to why the body-worn camera footage was redacted and modified. As mentioned above, this does not warrant dismissal of the indictment. Additionally, Defendant has not established that he suffered prejudice that would affect his future trial date.[54] A far less extreme remedy can be implemented to ensure Defendant has a fair trial, such as an in-camera review of the redacted and unredacted body-worn camera footage. For these reasons, the Court will not dismiss the indictment.

## II.   MOTION TO RELEASE THE GRAND JURY TRANSCRIPT

Next, if the indictment is not dismissed, Defendant asks the Court to release the Grand Jury transcript.[55] Defendant has not cited to any case law supporting this request. The simple answer is there is no transcript of the Grand Jury proceeding to release. "Despite references in court rules to recordings, transcripts, and the presence of stenographers at a grand jury meeting, grand jury proceedings have not been recorded in Delaware in living memory."[56]

---

[54] State's Resp. to Def.'s Mot. to Dismiss, D.I. 90, ¶ 37.
[55] Def.'s Mot. to Dismiss, D.I. 86, at ¶ 94.
[56] *State v. Ponzo*, 302 A.3d 1006, 1011 (Del. Super. Ct. 2023).

11

Even so, Delaware Courts have found that Grand Jury proceedings may be disclosed at the request of a defendant "upon showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the Grand Jury."[57] Delaware courts have interpreted the statutory language to allow the courts to order disclosure when the interests of justice so require.[58] Because the Court has already decided that justice does not require the indictment to be dismissed, even if there were a transcript for the Court to release, the exception does not apply.

For these reasons, the Court will not and cannot release the Grand Jury transcript.

## III. THE MOTION IN LIMINE

If the case is not dismissed, Defendant argues that the State's expert, Cpl. Smith, should not be allowed to testify. Defendant makes several arguments in the Motion in Limine. First, Defendant alleges there are credibility issues with Cpl. Smith's testimony.[59] Second, Defendant argues that Cpl. Smith lacks the necessary factual knowledge to provide expert testimony.[60] Lastly, Defendant argues that Cpl. Smith does not use reliable principles and methods, nor does he apply reliable methods and principles to the facts of the case.[61]

---

[57] *State v. Cooper*, 2024 WL 1093259, at *2 (Del. Super. Ct. 2024).
[58] *Ponzo*, 302 A.3d at 1011.
[59] Def.'s Suppl. to Mot. in Lim., D.I. 87, ¶ 42.
[60] *Id.*
[61] *Id.*

In order to be admissible, expert testimony must be relevant and reliable.[62] Rule 702(d) of Delaware Rules of Evidence states:

> [a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.[63]

Defendant argues that the factors set forth in Rule 702 were not met and therefore Cpl. Smith's testimony should be excluded. However, as explained hereinafter, Defendant's concerns with Cpl. Smith's expert testimony are better addressed through cross-examination. Cpl. Smith's testimony is both relevant and reliable and therefore is admissible.

   A.   *The Court does not find credibility issues that would warrant exclusion of the expert's testimony.*

Defendant argues that there are credibility issues with Cpl. Smith's testimony.[64] First, Defendant claims that Cpl. Smith's testimony and representations that Defendant was accelerating prior to the collision, which he included in his opinion for the search warrant are problematic.[65] Further, his opinion did not change

---

[62] *McLeod v. McLeod*, 2015 WL 854299, at *1 (Del. Super. Ct. 2015).
[63] D.R.E. 703(d).
[64] Def.'s Suppl. to Mot. in Lim., D.I. 87, ¶ 42.
[65] *Id.*

when he received evidence suggesting the contrary.[66]  Second, Cpl. Smith testified that Detective Bluto's report was correct, but later admitted that he had not reviewed Detective Bluto's report and it was actually incorrect.[67]

In the case *State v. McMullen*, the Court determined that under *Daubert*, only two of the experts were relevant and reliable to testify about Pediatric Condition Falsification, and excluded the other experts from testifying.[68]  The Court found that an expert may testify "if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence at issue."[69]  The Court explained that "knowledge" must be derived from supportable facts.[70]  Additionally, the Court explained that "scientific opinions need not be '[held] to a certainty' to be offered at trial, they must be grounded in the scientific method to qualify as 'scientific knowledge.'"[71]  When assessing whether the proponent has met the burden of establishing the relevance and reliability of the evidence, *Daubert* only requires the Court to determine whether the scientific conclusions were found by using sound and reliable approaches.[72]  The defendant argued that the testimony was not relevant or reliable because there were no guidelines for diagnosing Pediatric Condition

---

[66] *Id.* ¶ 24.
[67] *Id.* ¶ 42.
[68] 900 A.2d 103 (Del. Super. Ct. 2006) (*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993)).
[69] *Id.* at 113.
[70] *Id.*
[71] *Id.*
[72] *Id.*

Falsification, it had not been tested or subject to "rigorous" scientific review, and there was no known rate of error.[73] However, both experts testified that diagnosing Pediatric Falsification Condition requires differential diagnosis, which they both employed.[74] The Court found that two of the experts' opinions were based on scientific knowledge and would assist the jury. Therefore, the testimonies were admissible under *Daubert*.[75]

In the present case, Defendant argues that Cpl. Smith's opinion that Defendant was accelerating prior to the collision was a predetermined conclusion that ignored contrary facts.[76] Additionally, he did not change his opinion after viewing the Airbag Control Module, which shows that Defendant was not accelerating.[77] Defendant claims this is a misrepresentation to the Court.[78] Defendant states that Cpl. Smith's opinion was not the product of reliable principles and methods, and his opinion was based on inaccurate factual predicates.[79] However, in the response to the Motion in Limine, the State argues that Cpl. Smith had a sufficient factual basis to form an opinion.[80] The Court agrees with the State.

---

[73] *Id.* at 111.
[74] *Id.* at 119.
[75] *Id.* at 106.
[76] Def.'s Suppl. to Mot. in Lim., D.I. 87, ¶ 22.
[77] *Id.* ¶ 42.
[78] *Id.* ¶ 42.
[79] *Id.* ¶ 24.
[80] State's Resp. to Def.'s Suppl. to Mot. in Lim., D.I. 89, ¶ 25.

Cpl. Smith investigated the scene of the collision and watched and listened to the ring-style video footage from Frankford Elementary School, which showed the roadway in front of the school.[81] Cpl. Smith applied for and obtained a search warrant for the Mercedes Airbag Control Module's Event Data Recorded, which provides data concerning the vehicle's operation up to five seconds prior to the collision.[82] Approximately five seconds prior to impact, the Defendant was traveling 88 miles per hour with 100% accelerator pedal position.[83] He continued to accelerate with 100% accelerator pedal position until .5 seconds prior to impact.[84] Cpl. Smith's report noted that Defendant accelerated his vehicle to a high rate of speed, allowing the front of his vehicle to collide with the rear of the ATV.[85] Cpl. Smith stated that this opinion is consistent with what he observed at the scene of the collision, the measurements he took, the video he observed, and his training and experience as a collision reconstructionist.[86] He defined "acceleration" as "a change in velocity over a period of time."[87] The State claims that Cpl. Smith's opinion is consistent with the data from the Airbag Control Module.[88] Defendant thoroughly cross-examined Cpl.

---

[81] *Id.* at ¶ 4, 25.
[82] *Id.* ¶ 7.
[83] *Id.*
[84] *Id.*
[85] *Id.* ¶ 9.
[86] *Id.* ¶ 25.
[87] Tr. Attach. to Def.'s Suppl. to Mot. in Lim., D.I. 87, at 31.
[88] State's Resp. to Def.'s Suppl. to Mot. in Lim., D.I. 89, ¶ 32.

Smith at the Daubert hearing, where Cpl. Smith admitted that he could not determine the exact speed of the vehicle when he authored his report.[89]

Delaware Courts have held that a "proponent need to show only by a preponderance of the evidence that its expert's opinions are reliable[,] not that they are correct."[90] Defendant's argument regarding Cpl. Smith's use of "acceleration" can be explored on cross-examination. It does not need to be a correct statement but needs to be reliable. To be reliable, the opinion must have been grounded in the scientific method.[91] Aforementioned, Cpl. Smith testified that his findings were based upon the video footage he watched, and the investigation conducted at the collision scene.[92] In the response to the supplemental Motion in Limine, the State outlines that Cpl. Smith relied upon the following facts when reaching his opinion:

> (1) The ATV was established in the roadway; (2) the ATV was hit squarely from the rear; (3) the rear of the ATV and the front of the Mercedes were significantly damaged; (4) there was no physical evidence of preimpact braking; (5) there was no evidence of post-impact skid marks from the Mercedes; (6) the EDR [airbag control module] data shows Defendant traveling at high speeds with 100% accelerator pedal from 5 seconds to 4 seconds prior to impact; (7) that the Defendant was traveling at 92 mph with 0% accelerator pedal position at 4 seconds; at 3.5 seconds, the Defendant once again had 100% accelerator position; (9) the Defendant did not go back to 0% accelerator position until .5 seconds prior to impact while he was traveling 101 mph; (10) the EDR [airbag control module] data shows minimal braking and no ABS [anti-lock brake] activity within

---

[89] Tr. Attach. to Def.'s Suppl. to Mot. in Lim., D.I. 87, at 62.
[90] *State v. Dale*, 2021 WL 5232344, at *5 (Del. Super. Ct. 2021).
[91] *McMullen*, 900 A.2d at 113.
[92] State's Resp. to Def.'s Suppl. to Mot. in Lim., D.I. 89, ¶ 33.

.5 seconds of impact; (11) the EDR [airbag control module] does not reflect significant evasive maneuvering; (12) the vehicles continued to move more than 300 feet from the site of the collision; and (13) the school's ring camera depicts the ATV and Mercedes post impact.[93]

Furthermore, Cpl. Smith's testimony is relevant because it would "assist the trier of fact to understand the evidence or to determine a fact in issue."[94] Cpl. Smith testified that every time he used the word "accelerate" in an opinion, he believes it is an accurate reflection of the data he had.[95] For this reason, the Court finds that Cpl. Smith's testimony regarding the acceleration of the vehicle is reliable and relevant and should not be excluded.

Next, Defendant argues there are credibility issues because Cpl. Smith incorporated Detective Bluto's report into his own report, but later admitted to not reading it.[96] However, the basis of an expert's opinion is a matter for cross-examination. Cpl. Smith's report references Detective Bluto's report, which includes a summary of one of the videos. Cpl. Smith stated that he provided his own analysis of the video in a later section of the report.[97] When asked on cross-examination if Detective Bluto's report is correct, Cpl. Smith initially said yes, but then conceded that Detective Bluto's report is incorrect.[98] Cpl. Smith claimed he

---

[93] *Id.* ¶ 37.
[94] *McMullen*, 900 A.2d at 113.
[95] Tr. Attach. to Def.'s Suppl. to Mot. in Lim., D.I. 87, at 113.
[96] Def.'s Suppl. to Mot. in Lim., D.I. 87, ¶ 42.
[97] Tr. Attach. to Def.'s Suppl. to Mot. in Lim., D.I. 87, at 88-91.
[98] *Id.* at 90-91.

did not incorporate Detective Bluto's report into his own report, but rather referenced it because he had not watched the video at that time.[99] This is not sufficient to exclude Cpl. Smith's testimony. As aforementioned, the proponent only needs to show that the expert's opinion is reliable, not correct.

As mentioned above, "[a]n expert's testimony will only be excluded in the narrow circumstance that the expert has completely neglected the core facts of the case."[100] Cpl. Smith not reviewing Detective Bluto's report is a matter of factual basis that can be explored and challenged through cross-examination. For this reason, Cpl. Smith's testimony will not be excluded.

### B. The Court does not find a lack of necessary factual knowledge.

The Court finds that Cpl. Smith's testimony is based on sufficient facts and data. Defendant argues that Cpl. Smith lacks the necessary factual knowledge by failing to review the fisheye camera view from the school and the Handy's residence ring video camera footage.[101] The State argues that the depth of the investigation is a matter for cross-examination.[102]

Both Defendant and the State cite to *McLeod v. McLeod*, a personal injury case.[103] In *McLeod,* the Court deferred decision on the defendant's motion to

---

[99] *Id.* at 89.
[100] *Dale*, 2021 WL 5232344, at *5 (quoting *Smack-Dixon v. Wal-Mart, Inc.,* 2021 WL 3012056, at *6 (Del. Super. Ct. 2021)).
[101] Def.'s Suppl. to Mot. in Lim., D.I. 87, ¶ 42.
[102] State's Resp. to Def.'s Suppl. to Mot. in Lim., D.I. 89, ¶ 26.
[103] Def.'s Suppl. to Mot. in Lim., D.I. 87, ¶ 12.

exclude the plaintiff's experts' testimonies until after the plaintiff had supplemented his expert report.[104] The plaintiff wrote his own report, which identified two doctors that were to testify as his experts. The plaintiff's report provided a brief synopsis, but did not provide the doctors' affidavits or reports.[105] The first expert was to testify about the symptoms and indicators of sexual abuse in children, the effects of abuse during developmental stages, and the lasting symptoms.[106] Plaintiff did not indicate that the first expert was to testify about his specific case.[107] The second expert was to provide specific testimony about the case, including plaintiff's treatment for post-traumatic stress disorder, substance abuse, treatment for flashbacks, regression to age five years old, etc.[108] However, the plaintiff did not indicate that the experts had reviewed the plaintiff's medical records or examined the plaintiff.[109] The only medical record that was provided to the Court was a disability slip that showed the plaintiff was treated for depression, PTSD, and alcoholism.[110] The defendant sought to exclude both experts' testimonies because the first doctor did not have sufficient factual information to form an expert opinion and the second doctor's opinion lacked factual basis and was not relevant.[111]

---

[104] 2015 WL 854299 (Del. Super. Ct. 2015).
[105] *Id.* at *2.
[106] *Id.*
[107] *Id.*
[108] *Id.*
[109] *Id.* at 3.
[110] *Id.*
[111] *Id.* at 3-4.

In *McLeod*, the Court stated that "Delaware courts have found expert testimony inadequate and worthy of exclusion where the expert report did not demonstrate that the expert had specifically and correctly considered the facts of the present case in forming a proffered opinion."[112] The Court further explained that expert testimony is excluded when the testimony is based on an incorrect understanding of the facts, the expert's report contains no specific facts, and the expert fails to describe the methodology.[113] The plaintiff did not allege that the doctors examined plaintiff or reviewed the plaintiff's medical records.[114] The doctors' opinions were based primarily on the plaintiff's self-reports.[115] The Court found that the plaintiff had not shown that the experts were equipped to testify and gave the plaintiff additional time to supplement the record.[116]

Defendants also cite to *Perry v. Berkley*, arguing that the present case is "analogous to *Perry*."[117] The Court disagrees. In *Perry*, the defendants filed a motion in limine to exclude testimony from the plaintiff's expert, which was granted by the Superior Court and affirmed by the Supreme Court.[118] The Supreme Court found that the expert's testimony was inadmissible under *Daubert* and Rule 702 of

---

[112] *Id.* at 5.
[113] *Id.*
[114] *Id.* at 6.
[115] *Id.*
[116] *Id.*
[117] Def.'s Suppl. to Mot. in Lim., D.I. 87, ¶ 43.
[118] 996 A.2d 1262, 1271 (Del. 2010).

Delaware Rules of Evidence for lack of factual knowledge.[119] Plaintiff's expert did not treat the plaintiff and did not opine as to whether the cervical issues were related to the accident.[120] The expert also was unaware of plaintiff's prior medical treatment for the neck and back.[121] The plaintiff failed to offer expert testimony that the defendants' conduct caused the injuries in whole or in part.[122] The Court held that even though the factual basis of an expert's testimony generally goes to the credibility of the testimony, rather than admissibility, the testimony must be excluded if it is not based upon an understanding of the fundamental facts of the case.[123] If an expert's opinion is not "based upon an understanding of the fundamental facts of the case . . . it can provide no assistance to the jury . . . ."[124] Additionally, the Court noted that the plaintiff's attorney did not ask the expert for an updated opinion based upon the plaintiff's correct medical history.[125] Since the prior medical history was pivotal to determine whether the car accident caused her back injuries, the expert could not have properly formed an opinion without reviewing the plaintiff's medical

---

[119] *Id.*
[120] *Id.* at 1265.
[121] *Id.* at 1271.
[122] *Id.*
[123] *Id.*
[124] *Id.*
[125] *Id.* at 1270.

history.[126]  The Supreme Court affirmed the trial court's decision to exclude the expert's testimony.[127]

In the case *State v. Dale*, the defendant sought to exclude the state's expert testimony due to a lack of sufficient facts or data.[128]  The expert witness was a neurologist who had not conducted a physical examination of the defendant, but was offering testimony regarding the defendant's diagnosis compared to the symptoms exhibited by a suspect in a surveillance video.[129]  The expert reviewed a four hour video of the defendant's interrogation to evaluate for signs and symptoms of a radial nerve injury, defendant's medical records, and a surveillance footage of the suspect who was exhibiting mobility issues.[130]  The Court found that a physician does not need to conduct every possible test or rule out every possible diagnosis so long as the expert employed sufficient techniques to have "good grounds" for the conclusion.[131]  The Court held that attacks of the factual sufficiency or basis of an expert's opinion "may warrant vigorous cross-examination or admission of contrary evidence[,] but not exclusion."[132]  The Court further found that "[t]he different depth with which [an expert] pursued particular lines of investigation and the different

---

[126] *Id.* at 1271.
[127] *Id.*
[128] 2021 WL 5232344, at *3, *aff'd,* 301 A.3d 1194 (Del. 2023).
[129] *Id.* at 4.
[130] *Id.* at 3.
[131] *Id.* at 6.
[132] *Id.*

23

assumptions they made are readily subject to cross-examination and to evaluation by the fact finder for credibility and weight."[133] "An expert's testimony will only be excluded in the narrow circumstance that the expert has completely neglected the core facts of the case."[134]

The present case is distinguishable from *McLeod*, *Perry,* and *Dale*. In the present case, Cpl. Smith reviewed video footage, assessed the evidence from the scene, and the data from the Mercedes Airbag Control Module. Even though Cpl. Smith did not review the fisheye video camera initially, he testified that his opinion did not change after watching it. Unlike the experts in the cases above, Cpl. Smith has a factual understanding of the evidence and the facts surrounding the case. Even though he did not review every piece of evidence, and his findings may be proven false at trial, his opinion is reliable and relevant. There is scientific knowledge to support his opinion, and his opinion would assist a jury.

The factual basis of Cpl. Smith's testimony is an issue of credibility, not admissibility. Defendant should challenge the factual basis on cross-examination. For this reason, the Court does not find that Cpl. Smith's expert testimony should be dismissed for lack of factual knowledge.

---

[133] *Id.* at 5 (quoting *Henlopen Hotel, Inc. v. United Nat'l Ins. Co.*, 2020 WL 233333, at *4 (Del. Super. Ct. 2020); *Perry*, 996 A.2d at 1271)).
[134] *Id.* at 5 (quoting *Smack-Dixon v. Wal-Mart, Inc.,* 2021 WL 3012056, at *6 (Del. Super. Ct. 2021)).

C. *The Court does not find a lack of use of reliable principles and methods or a lack of application of reliable methods and principles to the facts of the case.*

Next, Defendant argues that Cpl. Smith did not rely upon reliable principles or methods in forming and authoring an opinion (the search warrant affidavit) prior to having all of the necessary facts.[135] Defendant argues that Cpl. Smith's method of investigation is unreliable because he stated that the actions of the ATV prior to the accident were not relevant to the investigation.[136] Next, Defendant claims that Cpl. Smith did not meet the "bare minimum" of an accident investigation because he did not review all available evidence.[137] After learning that the State did not review all evidence, the expert report was not updated.[138]

As mentioned above, the Court in *State v. Dale* held that "[t]he different depth with which [an expert] pursued particular lines of investigation and the different assumptions they made are readily subject to cross-examination and to evaluation by the fact finder for credibility and weight."[139] "An expert's testimony will only be excluded in the narrow circumstance that the expert has completely neglected the core facts of the case."[140]

---

[135] Def.'s Suppl. to Mot. in Lim., D.I. 87, ¶ 42.
[136] *Id.*
[137] *Id.*
[138] *Id.*
[139] *Dale*, 2021 WL 5232344, at *5 (quoting Henlopen Hotel, 2020 WL 233333, at *4; *Perry*, 996 A.2d at 1271).
[140] *Id.* (quoting *Smack-Dixon v. Wal-Mart, Inc.,* 2021 WL 3012056, at *6 (Del. Super. Ct. 2021)).

Cpl. Smith did not completely neglect the core facts of the case. In his report seeking a search warrant, Cpl. Smith relied upon his personal investigation of the scene of the collision and a ring-style video footage from Frankford Elementary School that showed the roadway in front of the school. Cpl. Smith analyzed the video to gauge an average speed of the vehicles, and he used two different formulas to determine a rough estimate of the vehicle's speed prior to the collision. Initially, he did not watch all of the available video footage. However, Cpl. Smith later watched the videos and stated that it did not change his opinion or findings. He stated that neither video shows the ATV clearly entering the roadway and he believes the ATV had rear lights on the back of the vehicle.[141] In Cpl. Smith's supplemental report, he states that the angle of the fisheye video "does not show when or how the ATV enters the roadway, just that the ATV is in the roadway traveling westbound. This video would not be able to be used for any formal reconstruction or video analysis, due to the distortion of the fisheye lens."[142]

Because Cpl. Smith did not completely neglect the core facts of the case, Defendant's concerns with the methods of the State's investigation should be explored on cross-examination. The manner in which Cpl. Smith and the State conducted their investigation does not require the Court to exclude Cpl. Smith from

---

[141] Tr. Attach. to Def.'s Suppl. to Mot. in Lim., D.I. 87, at 106-107.
[142] State's Resp. to Def.'s Suppl. to Mot. in Lim., D.I. 89, ¶ 28.

testifying. For these reasons, the Court does not find that Cpl. Smith's testimony lacks the of use of reliable principles and methods or lacks application of reliable methods and principles to the facts of the case.

## CONCLUSION

For these reasons, Defendant's Motion to Dismiss the Indictment is **DENIED**. Defendant's Motion to Release the Grand Jury Transcript is **DENIED**. Defendant's Motion in Limine is **DENIED**.

**IT IS SO ORDERED.**

/s/ *Mark H. Conner*
Mark H. Conner, Judge

xc: Prothonotary